546 S.E.2d 654

**SOUTH CAROLINA PIPELINE CORPORATION, Plaintiff,**

v.

**LONE STAR STEEL COMPANY, Defendant.**

**No. 25292.**

Supreme Court of South Carolina.

Heard April 24, 2001
Decided May 15, 2001.

Charles S. Porter, Jr. and Benjamin E. Nicholson, V, of McNair Law Firm of Columbia, for Plaintiff.

Gray T. Culbreath, of Collins & Lacy, P.C., of Columbia, for Defendant.

PER CURIAM:

We accepted this certified question in our original jurisdiction to determine if a certain gas transmission line constitutes an "improvement to real property" for purposes of S.C.Code Ann. § 15–3–640 (Supp.2000).

## FACTS

South Carolina Pipeline Corporation ("Pipeline") owns a natural gas pipeline running from Aiken to Bishopville. Construction of the pipeline was completed in 1961. The property under which the pipeline is buried consists of contiguous easements, all owned by Pipeline. In 1998, the pipeline ruptured and exploded. The explosion caused personal injuries and property damage. After Pipeline paid the claims for the resulting property damage and personal injuries, it brought a products liability action against Lone Star Steel Company ("Lone Star"), the manufacturer of the pipe. In the suit, Pipeline seeks indemnification for the costs it has incurred as a result of the explosion.

## CERTIFIED QUESTION

Does the gas transmission line in question constitute an "improvement to real property" under S.C.Code § 15–3–640 (Supp.2000)?

## DISCUSSION

Section 15–3–640 provides, in part, that "[n]o actions to recover damages based upon or arising out of the defective or unsafe condition of an improvement to real property may be brought more than thirteen years after substantial completion of such an improvement...." [1]

---

1. The section's preamble provides, in part:

   Whereas, the General Assembly finds that persons involved in improvements to real property are subject to the economic and emotional burdens of litigation and liability for an indefinite period of time upon allegations of defective or unsafe conditions; and

In answering the question before us, we must determine whether this easement is "real property" for purposes of § 15–3–640 and, if so, whether the pipeline at issue constitutes an "improvement" thereto.

■■■ We recently stated that "[a]n easement gives no title to land on which [the] servitude is imposed, but it is a property or an interest in land." *Main v. Thomason,* 342 S.C. 79, 92, 535 S.E.2d 918, 924 (2000). American Jurisprudence describes an easement as "neither an estate in land nor the 'land' itself. It is, however, property or an interest in land. Thus, an easement is real property." 25 AM. JUR. 2D *Easements and Licenses* § 2 (1996). We hold that this easement is real property within the ambit of § 15–3–640, and that it is capable of being improved.

■■■ We have not defined the term "improvement" in the context of § 15–3–640. In construing that term for purposes of the Betterment Statutes,[2] we cited with approval the then-current definitions of "improvement" from American Jurisprudence and Corpus Juris Secundum:

Whereas, the General Assembly finds it in the public interest to provide a measure of protection against claims and litigation arising years after substantial completion of an improvement to real property; and

Whereas, the General Assembly finds that substantial differences exist between improvements to real property and other activities for which liability may be alleged, including the fact that improvements to real property have lengthy useful lives and are utilized, changed, and affected by many people, forces, and things after completion; and

Whereas, the General Assembly finds it reasonable and necessary to distinguish between a person in actual possession or control of an improvement to real property and those otherwise involved in an improvement to real property, for the following reasons: because acceptance of some future responsibility for the condition of the premises is implied in the acceptance of an improvement to real property; because possession or control of the premises is a reasonable and fair basis for imposing some additional liability; because after the date of acceptance of the work by the owner, there exists the possibility of neglect, abuse, poor maintenance, mishandling, improper modification, or unskilled repair of an improvement; because owners and persons in control have the opportunity to avoid liability by taking care of the improvement and by regulating its use....

**2.** *See* S.C.Code Ann. §§ 27–27–10 through 100 (1991).

The phrase 'permanent improvements' means something done to or put upon the land, which the occupant cannot remove or carry away with him, either because it has become physically impossible to separate it from the land or because, in contemplation of law, it has been annexed to the soil and is therefore to be considered a part of the freehold.... It has been held, on the one hand, that the term 'improvements' applies only to things which have been placed upon the land under such circumstances as to make them a part of the realty, and, on the other hand, that it comprehends all additions to the freehold, except trade fixtures which can be removed without injury to the building.

*Dunham v. Davis*, 232 S.C. 175, 183–84, 101 S.E.2d 278, 282 (1957).

The current versions of American Jurisprudence and Corpus Juris Secundum contain the following:

Generally speaking, the word "improvement" includes everything that permanently enhances the value of premises for general uses. However, an "improvement" need not only enhance the value of the property, but may also enhance the beauty or utility of that property or adapt it to different or further uses.

41 AM. JUR. 2D *Improvements* § 1 (1995). "The term 'improvements' ... may be defined as improvements on realty which are more extensive than ordinary repairs, and enhance in a substantial degree the value of the property." 42 C.J.S. *Improvements* § 2 (1991).

Other courts more precisely define improvement as a permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable, as distinguished from ordinary repairs. *United States Fire Ins. Co. v. E.D. Wesley Co.*, 105 Wis.2d 305, 313 N.W.2d 833, 835 (1982); *Delgadillo v. Socorro*, 104 N.M. 476, 723 P.2d 245, 247 (1986).

The elemental and cardinal rule of statutory construction is that the Court ascertain and effectuate the actual intent of the legislature. In construing a statute, its words must be given their plain and ordinary meaning without resort to subtle or

forced construction to limit or expand the statute's operation. *Broadhurst v. City of Myrtle Beach Election Comm'n,* 342 S.C. 373, 537 S.E.2d 543 (2000). We look to the preamble of § 15-3-640 as an aid in determining if the legislature intended to include the pipeline at issue within the statute of repose.

Pipeline argues, *inter alia,* that the pipeline is not an improvement because it is not a permanent addition to realty. We decline to give the word "permanent" as used in the above-cited definitions of improvement the rigid interpretation advanced by Pipeline. The preamble makes clear the legislature's intent to extend the protection contained in the statute of repose to additions which have "lengthy useful lives." The pipeline unquestionably had a "lengthy useful life."

The pipeline at issue here satisfies any of these contemporary definitions of "improvement." The pipeline unquestionably made the easement more valuable to Pipeline; it involved the investment of labor and money; and it was permanent[3] as that phrase is commonly understood—it had been in place for 38 years when the explosion occurred. Whether an addition to real property constitutes an improvement requires a case by case determination. We hold under these facts, the pipeline is an improvement to the real property under which it lies for purposes of § 15-3-640.

## CONCLUSION

Because Pipeline's easement was real property, and because the pipeline involved the expenditure of labor and money, enhanced the value of Pipeline's easement, and had a lengthy useful life, we answer the certified question in the affirmative.

CERTIFIED QUESTION ANSWERED.

TOAL, C.J., and MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.

---

3. Permanence is necessarily a relative term when applied to improvements, since no improvement, whether the Tower of Pisa or the Pyramids at Giza, is truly permanent. They do, however, have "lengthy useful lives"—as set forth in the preamble to § 15-3-640.