Marcus ERVIN, Plaintiff,

v.

CONTINENTAL CONVEYOR & EQUIPMENT COMPANY, INC., Defendant.

Civil Action No.: 4:07–cv–3010–TLW–TER.

United States District Court, D. South Carolina, Florence Division.

July 23, 2009.

Samuel Kirkpatrick Morgan, Jr., Walker and Morgan LLC, Lexington, SC, for Plaintiff.

Angela Gilbert Strickland, Joel Haywood Smith, Richard H. Willis, Nelson Mullins Riley and Scarborough, Columbia, SC, for Defendant.

711

## ORDER

TERRY L. WOOTEN, District Judge.

The plaintiff, Marcus Ervin ("plaintiff"), filed this action in the Court of Common Pleas, Florence County, South Carolina on July 12, 2007. The action was removed to federal court on September 5, 2007. (Doc. # 1). The matter is now before the Court for resolution of two motions for summary judgment filed by the defendant, Continental Conveyor and Equipment Company, Inc. ("defendant"). On January 8, 2009, the defendant filed its motion for summary judgment "Regarding Substantive Product Liability Issues," as well as its motion for summary judgment "Based on South Carolina's Statute of Repose for Improvements to Real Estate." (Doc. # 33, Doc. # 34). The plaintiff filed a response to each of the defendant's motions on February 12, 2009. (Doc. # 40, Doc. # 41). The defendant filed a reply to each of the plaintiff's responses on February 27, 2009. (Doc. # 43, Doc. # 44). The defendant also filed a supplemental brief on April 23, 2009. (Doc. # 48). The Court held a hearing on this matter on April 30, 2009. The Court has carefully considered the motions, memoranda, and exhibits submitted by the parties, as well as the arguments presented at the hearing. The Court has determined the relevant facts from the record presented by the parties, and drawn all reasonable factual inferences in favor of the non-moving party.

## FACTS

This case arises out of an industrial accident that occurred on December 2, 2005 in which the plaintiff lost his arm while working for the United States Department of Agriculture ("USDA") in Florence, South Carolina. At the time of the injury, the plaintiff was working at the Florence Cotton Classing Office, a regional facility at which the USDA assigns grades to samples of cotton that are grown in the area. As the cotton samples move through the classification process, they are transported around the USDA facility on horizontal conveyor belts. Ultimately, the cotton is transported to an incline conveyor system which transfers the cotton upward approximately 12 to 20 feet so that the loose cotton samples can be loaded into a hopper. The hopper sits directly on top of a baler that compresses the samples of loose cotton into cotton bales, which are later sold by the USDA. The hopper acts as a temporary storage compartment and feeder for the baler. The incline conveyor system has a time-delay feature that shuts down the conveyor for a short time interval, ranging from approximately 20 to 60 seconds, while the baler is in the process of compressing a cotton bale. The incline conveyor system, hopper, baler, and related components are manufactured by the defendant. The horizontal conveyor belts which transport the cotton samples throughout the Florence Cotton Classing Office are manufactured by other industrial manufacturers not involved in this litigation.

The incline conveyor that feeds the hopper and baler is housed in a steel casing and driven by a pulley system. As originally designed, the drive pulleys were completely encased in the incline conveyor system's steel housing. On the day of the accident, the plaintiff was reaching through a hole which had been cut into the metal casing of the incline conveyor system to remove cotton that had accumulated around the lower belt pulley which drives the main belt of incline conveyor system. It is undisputed that the access hole through which the plaintiff was reaching was not an original design feature, but was cut into the steel housing of the incline conveyor system by an unknown third party at some point after the initial sale of the machine to the USDA. An accumulation of cotton around the lower belt pulley causes

the conveyor belt on the incline conveyor to mis-track, and USDA employees would have to clear this accumulation on a periodic basis. This clearing process was normally performed by having one employee turn off the power to the machine while the other employee reached into the access hole to remove the cotton which had accumulated around the lower belt pulley. USDA protocol called for the power supply to be "locked out" and "tagged out" prior to removing the cotton.

On the day of the accident, the plaintiff was working by himself. Without turning off or locking out the power to the machine, the plaintiff reached through the access hole to clear cotton which had accumulated around the lower belt pulley. The plaintiff was attempting to reach into the machine during the short time interval that the incline conveyor was stopped while the baler was compressing a bale. However, the plaintiff did not remove his arm before the baler finished its compression cycle, triggering the incline conveyor system to restart. When the system began operating, the plaintiff's gloved hand stuck to the surface of the pulley and was pulled into an in-running nip point on the conveyor system. This movement amputated the plaintiff's arm above the elbow.

The incline conveyor system in which the plaintiff was reaching was sold to the USDA by the defendant in 1985 as part of the sale of four similar systems to USDA Cotton Classing Offices throughout the southeastern United States. The original installation did not include a hopper. At some point in late 1994,[1] the incline conveyor system was disassembled and moved to a new Cotton Classing Office in Florence, South Carolina. Although the defendant did not move the incline conveyor system, the defendant sent an employee to the USDA facility to be present during the reassembly process. In 1994, the defendant also sold the USDA additional components for the incline conveyor system including a hopper and a five-foot incline conveyor extension. These parts were added when the incline conveyor system was reinstalled at the new USDA location. It is unknown whether the access hole was cut into the steel housing of the incline conveyor system by outside contractors before or after the incline conveyor system was moved in 1994.

### SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment should be granted when the pleadings, responses to discovery, and the record reveal that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Though this initial responsibility rests with the moving party, when a motion for summary judgment is made and

---

1. The defendant has stipulated that the move occurred sometime after August 2, 1994.

(Doc. # 39).

supported as provided in Rule 56, the non-moving party must produce "specific facts showing that there is a genuine issue for trial," rather than resting upon bald assertions contained in the pleadings. Fed. R.Civ.P. 56(e); *see Celotex,* 477 U.S. 317, 106 S.Ct. 2548.

When considering a motion for summary judgment, a court must view the facts and inferences in the light most favorable to the non-moving party. *Miltier v. Beorn,* 896 F.2d 848 (4th Cir.1990); *Cole v. Cole,* 633 F.2d 1083 (4th Cir.1980). Summary Judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (internal quotations omitted).

The defendant has filed separate motions for summary judgment. The defendant has moved for summary judgment on the ground that recovery is barred by the South Carolina statute of repose. (Doc. # 34). The defendant has also moved for summary judgment based on various substantive product liability grounds including comparative fault, assumption of the risk, and unforeseeable modification. (Doc. # 33). The Court will address each motion in turn.

## I.  Statute of Repose

The defendant has moved for summary judgment based on the South Carolina statute of repose, asserting that the statute precludes liability for any injury stemming from the sale and manufacture of the incline conveyor system. The South Carolina statute of repose applicable to this case provides that:

[n]o actions to recover damages based upon or arising out of the defective or unsafe condition of an improvement to real property may be brought more than thirteen years after substantial completion of the improvement.[2] For purposes of this section, an action based upon or arising out of the defective or unsafe condition of an improvement to real property includes:

. . . .

(2) an action to recover damages for the negligent construction or repair of an improvement to real property;

. . . .

(5) an action in contract or in tort or otherwise;

. . . .

(9) an action against owners or manufacturers of components, or against any person furnishing materials, or against any person who develops real property, or who performs or furnishes the design, plans, specifications, surveying, planning, supervision, testing, or observation of construction, or construction of an improvement to real property, or a repair to an improvement to real property.

S.C.Code § 15–3–640.

The determination of whether an addition to real property constitutes an "improvement to real property" requires a case by case determination. *South Carolina Pipeline Corp. v. Lone Star Steel Co.,* 345 S.C. 151, 546 S.E.2d 654, 657 (2001). The courts of South Carolina have had relatively few opportunities to interpret and apply the statute of repose in the context of improvements to real property. In *South Carolina Pipeline,* a recent case, the South Carolina Supreme Court ad-

**2.**  The statute was amended in 2005 to change the time limitation from thirteen to eight years, however the amended statute only applies improvements for which certificates of occupancy were issued after July 1, 2005. The parties do not dispute that the pre-amendment version of the statute governs the legal issues in this case.

dressed the proper interpretation of the phrase "improvement to real property," noting that no South Carolina court had yet taken the opportunity to interpret the phrase within the context of S.C.Code § 15–3–640. 546 S.E.2d at 656. In construing the term, the court first cited to definitions taken from prior versions of American Jurisprudence and Corpus Juris Secundum, noting that "the phrase 'permanent improvements' means something done to or put upon the land, which the occupant cannot remove or carry away with him, either because it has become physically impossible to separate it from the land or because, in contemplation of law, it has been annexed to the soil and is therefore to be considered a part of the freehold." *Id.* The court continued by citing updated definitions of the phrase, adding that "the word 'improvement' includes everything that permanently enhances the value of premises for general uses ... [h]owever, an 'improvement' need not only enhance the value of the property, but may also enhance the beauty or utility of that property or adapt it to different or further uses." *Id.* (citing AM. JUR. 2D *Improvements* § 1 (1995)). The court also examined the language of the statute's preamble, adding that the "preamble makes clear the legislature's intent to extend the protection contained in the statute of repose to additions which have 'lengthy useful lives.'" *Id.*

In determining that the statute of repose applied to an underground pipeline, the Supreme Court applied what amounted, essentially, to a three-factor analysis. The court held that the pipeline at issue "made the easement more valuable; ... involved the investment of labor and money; ... and ... was permanent as that phrase is commonly understood," given that the pipeline "had been in place for 38 years when the explosion occurred." *Id.* at 657. The court added in a footnote that "[p]ermanence is necessarily a relative term when applied to improvements, since

no improvement, whether the Tower of Pisa or the Pyramids at Giza, is truly permanent," but that these particular items have "lengthy useful lives—as set forth in the preamble to § 15-3-640" in connection with the real property to which these improvements are annexed. *Id.* at n. 3.

Aside from the natural gas pipeline at issue in *South Carolina Pipeline*, the courts of South Carolina have had little opportunity to directly address questions regarding the characteristics of items which qualify as "improvements to real property" for purposes of § 15-3-640, and the courts have applied the statute in relatively limited settings. In *Broome v. Truluck*, 270 S.C. 227, 241 S.E.2d 739 (1978), the statute of repose was applied in an action by an individual who was injured in a fall after she caught her foot on the raised threshold of a garage door that was installed as part of a renovation to a car dealership. After the trial court granted summary judgment in favor of the defendant based on the statute of repose, the plaintiff appealed on the basis that a prior version of South Carolina's statute of repose was unconstitutional on equal protection grounds. *Id.* at 740. The plaintiff conceded, however, that the statute of repose was otherwise applicable to the garage door at issue in the case. *Id.* The court held that the prior version of the statute was unconstitutional and remanded the case for further proceedings in light of the ruling, but never squarely addressed the issue of whether the garage door qualified as an improvement to real property. *Id.*

In *Ocean Winds Corp. of Johns Island v. Lane*, 347 S.C. 416, 556 S.E.2d 377 (2001), the South Carolina Supreme Court answered a certified question from the district court in an action applying the statute of repose to windows installed in a

condominium project. In answering the question, the Supreme Court held that substantial completion of the "improvement" occurred when the windows were installed, rather than when the certificate of occupancy was issued for the condominium project. *Id.* at 421–22, 556 S.E.2d 377. Again, however, the court did not have the opportunity to address the parameters of the statute of repose as it relates to improvements to real property, nor to discuss the factors which led to the conclusion that the statute applied.

Finally, the South Carolina Court of Appeals examined the statute of repose in connection with a set of bleachers installed in the gymnasium of Hannah–Pamplico High School in the case of *Florence County School District # 2 v. Interkal, Inc.*, 348 S.C. 446, 559 S.E.2d 866 (Ct.App.2002). In the case, a child was injured when the bleachers installed in the high school collapsed during a basketball game. *Id.* The child brought suit against the school district and the manufacturer of the bleachers. The school district settled with the plaintiff, and then brought suit against the bleacher manufacturer for contribution to the settlement. A special referee found that the statute of repose applied to the bleachers, and that the statute of repose also barred any action for contribution against the manufacturer. On appeal, the school district argued that the statute of repose should not apply in actions for contribution, but conceded that the statute of repose applied to the underlying personal injury action against the bleacher manufacturer. *Id.* at 869. The South Carolina Court of Appeals rejected this argument, and upheld the special referee's ruling that the statute of repose barred the school district's action for contribution.

In upholding the special referee's ruling, the South Carolina Court of Appeals did not have occasion to examine the particular characteristics of the bleachers, nor to directly address whether the bleachers qualified as an improvement to real property. However, there can be little debate that a set of traditional gymnasium bleachers, expected to remain at that gymnasium, can be classified as a permanent addition to a school, as the bleachers have a useful life potentially as long as that of the gymnasium itself. Though a set of gymnasium bleachers may be capable of being moved, as the defendant has pointed out, the bleachers apparently were not readily moveable nor routinely moved. As discussed at the hearing, the result may be different under the South Carolina statute of repose when discussing a set of mass-produced, prefabricated, mobile, metal bleachers like those that are often installed around athletic fields. However, a set of non-mobile gymnasium bleachers would, based on the South Carolina Court of Appeals' analysis, fall within the parameters of the state statute of repose.

While the decisions within South Carolina provide this Court with the framework within which to interpret and apply the statute, the cases do not answer the precise question before this Court. More specifically, the cases within South Carolina involve items that clearly fall within the boundaries of the statute of repose, and the courts of South Carolina have not had nor taken the opportunity to address industrial equipment within the context of the statute of repose. Both *Broome v. Truluck* and *Ocean Winds Corp. of Johns Island v. Lane* involved items that were actually incorporated into the physical structure of a building, whereas *South Carolina Pipeline v. Lone Star Steel* involved a pipeline which was buried within an easement to real property for 38 years. In addition, although the bleachers in *Florence County School District # 2 v. Interkal* may have been capable of being moved, they clearly had a lengthy useful life in connection with the gymnasium to

which they were annexed. Further, in only one of these cases did the South Carolina courts have the opportunity to directly examine how the phrase "improvement to real property" is to be defined and applied. Determining how the statute will be applied to an industrial conveyor system that is mobile, in light of current South Carolina caselaw, is an issue which tests the parameters of the statute of repose. A review of the cases cited leads to the conclusion that uncertainty remains as to whether the statute of repose applies when dealing with a conveyor system that can be moved.

The parties have cited a number of cases from other jurisdictions which provide persuasive authority on the issue before this Court. These cases are helpful in the analysis, and have been carefully considered. Indeed, in its effort to resolve this important issue, the Court has located and considered a number of cases beyond those cited in the memoranda which examine the manner in which various statutes of repose are applied to industrial equipment including conveyor systems. In examining these cases, the Court notes that different jurisdictions have not reached a uniform conclusion when faced with the question that is before this Court.

The defendant has cited a number of cases in which an action against the manufacturer or installer of a conveyor system was barred by a state statute of repose. In *Anderson v. M.W. Kellogg Co.*, an individual's arm was amputated after being pulled into the nip-point of a large, industrial conveyor system. 766 P.2d 637 (1988). The conveyor system at issue in the case connected two buildings in a brick plant, was several stories tall, and had been in place for 20 years prior to the accident in which the employee was injured. *Id.* at 639. The Supreme Court of Colorado determined that the conveyor constituted an improvement to real proper-

ty covered by the state statute of repose. In reaching this conclusion, the court noted that the conveyor "served a unique purpose in the operation of the plant," and that the "sheer size of the conveyor alone (over two stories high and several hundred feet long) suggests the lack of mobility which typically characterizes an ordinary improvement." *Id.* at 641 (parentheses in original).

In a similar case, the Seventh Circuit determined that a screw conveyor which moved material within a chocolate factory constituted an improvement to real property for purposes of the Illinois statute of repose. *Hilliard v. Lummus Co., Inc.*, 834 F.2d 1352 (7th Cir.1987). The conveyor in *Hilliard* was installed around 1950 when the plant was constructed, but had been modernized by an outside contractor in 1965. *Id.* at 1355. An employee brought suit against the company that performed the 1965 modernization of the conveyor after having his arm severed by the conveyor system in 1981. In applying the statute of repose, the lower court noted that the conveyor system "was installed in about 1950 along with the construction of the building and has remained there ever since;" that it could not "seriously be doubted that the conveyor substantially enhanced the value of the property;" and, that the conveyor was an "integral component" of the process which the plant was designed to accomplish. *Id.* The Seventh Circuit accepted this reasoning, and rejected the plaintiff's argument that the conveyor was merely a "piece of machinery" rather than an improvement to real property. *Id.*

The defendant further cited to the case of *Adair v. Koppers Co., Inc.*, 741 F.2d 111 (6th Cir.1984), in which the Sixth Circuit reviewed a determination that a coal conveyor constituted an improvement to real property for purposes of applying the Ohio

statute of repose. In *Adair*, an employee brought suit after having his arm caught in a conveyor system in 1980. The particular system had been installed by the defendant in 1923 and modified in 1949. In the case, the plaintiff argued that the conveyor system could be removed without damage to the land, and therefore was not permanently installed. *Id.* at 115. However, the Sixth Circuit concluded that the "degree of physical annexation, combined with the length of time the system has remained intact, despite the sale of the property," supported a finding that the conveyor system was a "permanent installation," and therefore an improvement to real property. *Id.* at 115–16.

Finally, the defendant cites the case of *McCormick v. Columbus Conveyer*, 522 Pa. 520, 564 A.2d 907 (1989), in which an individual brought suit after being injured in a coal conveyor system within a powerhouse that provided heat and hot water to buildings on the campus of Bucknell University. In *McCormick*, the Supreme Court of Pennsylvania determined that the manufacturer of the conveyor system, which had been in place for approximately 36 years at the time of the plaintiff's injury, had "devised a coal delivery system to be integrated into the construction of the new power plant that was uniquely suited to that site." *Id.* at 910. The Supreme Court also noted that it was clear that the manufacturer "did more than supply a standard piece of equipment, indistinguishable from any other it mass produced, that by chance became affixed to the University's property," and concluded that the manufacturer was entitled to the protections of the statute of repose. *Id.*

The Court finds the analysis and conclusions reached in these cases cited by the defendant to be persuasive. In addition to the cases cited by the defendant, the Court considered a number of additional cases in which a statute of repose was applied to a conveyor system or similar industrial device. *See Fuentes v. Continental Conveyor & Equip. Co., Inc.*, 63 S.W.3d 518 (2001) (Continental Conveyor's supervision of the installation of a conveyor system, which illustrated that Continental intended to "bear the ultimate responsibility for the proper installation of Continental's conveyor belt system," was sufficient to bring Continental within the protection of the Texas statute of repose which protects only the individuals responsible for the annexation of personalty to real property); *Reames v. Hawthorne–Seving, Inc.*, 949 S.W.2d 758 (Ct.App.1997) (conveyor system which "technically could be moved [was] constructively annexed to the realty because [the owner] never intended to move it more than a few feet as necessary for its operations and never moved it for any other purpose"); *Thorp v. Price Brothers Co.*, 441 N.W.2d 817 (Ct.App. 1989) (statute of repose applied to conveyor system); *Stone v. United Engineering*, 197 W.Va. 347, 475 S.E.2d 439 (1996) (statute of repose applied to "hotline" conveyor in aluminum plant); *Cross v. Ainsworth Seed Co.*, 199 Ill.App.3d 910, 145 Ill.Dec. 927, 557 N.E.2d 906 (Ct.App.1990) (statute of repose applied to conveyor in Illinois corn sorting plant that had been in place for approximately 18 years); *Goad v. Buschman Co.*, 2008 WL 906173 (N.D.Okla.2008) (statute of repose applied to three-story conveyor belt containing approximately 6,000 feet of conveyor).

However, the Court also considered a number of cases in which conveyor systems and similar industrial devices were determined not to be improvements to real property for the purpose of various state statutes of repose. For example, in *Tropello v. Mathews Conveyor Co.* 1994 WL 161380 (E.D.Pa.1994), the District Court for the Eastern District of Pennsylvania determined that a conveyor system in a Nabisco bakery did not constitute an im-

provement to real property. The particular system at issue "was made of eleven sections that were bolted together and attached directly to the bakery's ovens," and "was suspended from a steel frame consisting of vertical rods ... attached to beams running parallel to the ceiling of the plant." *Id.* at *1. The court noted that the system "as installed, could have been disassembled and reinstalled, with some modifications, in any of five other Nabisco bakeries in existence in 1962," and that "[s]imilar conveyor systems had been disassembled and moved by Nabisco to other Nabisco plants." *Id.* at *2. The court further noted that the conveyor at issue "was dismantled in 1992 and was sold for scrap." *Id.* In determining that the conveyor system did not qualify as an improvement to real property, the district court distinguished the conveyor system at issue from the system analyzed by the Pennsylvania Supreme Court in *McCormick v. Columbus Conveyer* by noting that the conveyor "was not incorporated into the construction of the building, as was the coal conveyor in *McCormick,*" nor was the conveyor "uniquely suited" to the bakery in which it was installed. *Id.* at *4. Thus, the court determined that the specific characteristics of the conveyor system did not indicate that the system was a permanent improvement covered by the statute of repose.

In a similar case, the Supreme Court of Louisiana determined that the designer and installer of a conveyor system was not entitled to protection under the state statute of repose which provided protection for individuals involved with the "design, planning, supervision, inspection, or observation of construction or the construction of an improvement to immovable property." *Cosse v. Allen–Bradley Co.,* 601 So.2d 1349, 1354 (1992). The court noted that the conveyor system at issue was approximately 80 feet in length, and "was suspended from the floor of the building and

attached with bolts." *Id.* at 1352, 1354. The court also noted that "[t]he conveyor is no longer in use," and that "in order to remove the conveyor, it would be necessary to disassemble it and take it out in pieces." *Id.* at 1354. Based on the record before it, the Louisiana Supreme Court concluded that the defendants had not "sufficiently proved that the conveyor was an improvement to an immovable," and declined to apply the statute of repose to the conveyor system. *Id.*

In *Aly v. Federal Express, Inc.,* 2008 WL 4378233 (D.N.J.2008), the District Court for the District of New Jersey examined whether the New Jersey statute of repose would bar an action against the designer of an extendable boom conveyor that was used in a Federal Express package sorting facility. A maintenance worker was injured when his arm was pulled into an in-running nip point on the underside of the conveyor during repair work. *Id.* at *2. In deciding whether the conveyor constituted an improvement to real property, the district court examined factors similar to those examined by the South Carolina Supreme Court in *South Carolina Pipeline:* namely, "whether the modification or addition enhances the use of the property, involves the expenditure of labor or money, is more than mere repair or replacement, adds to the value of the property and is permanent." *Id.* at *8 (internal citations omitted). However, New Jersey common law has an additional limitation not found in the South Carolina common law, which provides that "[t]o fall within the statute, an improvement must be an improvement to the structure or to those systems that are integral to the function of the structure as intended," such as a heating, electrical, plumbing or air conditioning system. *Id.* This additional limitation contributed to the court's conclusion that "equipment ... even large-scale production machinery such as the

conveyor system at issue, does not constitute a structural improvement and therefore does not come within the statute's protection." *Id.* Thus, although the New Jersey decision involves a similar factual scenario, the law governing the decision varies from that of South Carolina.

In addition to the above cited cases, the Court has also reviewed additional cases in which statutes of repose were not applied to conveyor belts and similar industrial equipment for a variety of reasons. *See Gonzalez v. Pentek Corp.*, 1997 WL 563397 (E.D.Pa.1997) (conveyor system installed in a building in 1982 but later modified in 1983; jury question as to timing of the modification which caused plaintiff's injury prevented entry of summary judgment); *Condit v. Lewis Refrigeration Co.*, 101 Wash.2d 106, 676 P.2d 466 (1984) (employee injured by conveyor belt within freezer tunnel in frozen vegetable processing plant; Washington statute did not protect "manufacturers of heavy equipment or nonintegral systems within the building" such as conveyor belts; "simply bolting, welding the equipment or fastening it in some other manner to the building" will not bring a manufacturer within the statute's reach); *Johnson v. Machine Ice Co.*, 820 S.W.2d 850 (Ct.App.1992) (employee's arm severed by an auger which was a component of a conveyor system that transported ice; factual question as to whether the auger, conveyor, or ice plant as a whole constituted an improvement to real property warranted reversal of summary judgment). Though these cases involve a number of variations of state law,

the Court has examined the analysis applied by the courts within these cases. In addition, the Court has considered the statute of repose analysis in a number of cases involving industrial equipment other than conveyor systems.[3]

Turning to the precise issues involved in this case, the Court again notes that the binding South Carolina decisions interpreting S.C.Code § 15–3–640 guide the analysis. As noted in *South Carolina Pipeline,* the determination of whether "an addition to real property constitutes an improvement requires a case by case determination." 546 S.E.2d at 657. In making this case by case determination, the South Carolina Supreme Court has examined whether a particular improvement "made the [property] more valuable" to the owner, "involved the investment of labor and money," and "was permanent." *Id.* This Court has little doubt that the conveyor system at issue in this case, like the overwhelming majority of improvements made to real property, made the property more valuable and involved the investment of labor and money. The permanence factor, however, is a significant factor in the analysis of this particular case.

Although a piece of industrial equipment can be permanently annexed to real property and classified as an improvement to real property, this Court notes, for purposes of analysis, that the incline conveyor system at issue in this case can most aptly be classified as piece of industrial equipment. From the record available to this Court, the incline conveyor system includ-

**3.** *See Sonnier v. Chisholm–Ryder Co., Inc.,* 909 S.W.2d 475 (1995) (tomato chopper); *Sevilla v. Stearns–Roger, Inc.,* 101 Cal.App.3d 608, 161 Cal.Rptr. 700 (Ct.App.1980) (industrial syrup pan): *McCalla v. Harnischfeger Corp.,* 215 N.J.Super. 160, 521 A.2d 851 (Ct.App. 1987) (crane); *Ball v. Harnischfeger Corp.,* 877 P.2d 45 (1994) (crane); *Luzadder v. Despatch Oven Co.,* 834 F.2d 355 (3d Cir.1987) (industrial furnace); *Ritter v. Abbey–Etna Machine Co.,* 483 N.W.2d 91 (Ct.App.1992) (steel tube mill); *Vargo v. Koppers Co., Inc.,* 552 Pa. 371, 715 A.2d 423 (1998) (industrial door machine); *Beals v. Superior Welding Co.,* 273 Ill.App.3d 655, 210 Ill.Dec. 525, 653 N.E.2d 430 (Ct.App.1995) (industrial reactor tank): *Smith v. Allen–Bradley Co.,* 371 F.Supp. 698 (W.D.Va.1974) (die cutting press).

ed a conveyor roughly 12 to 20 feet in length which transported cotton fragments upward so that they could be loaded into a gravity-fed hopper and baler which compressed the fragments into a cotton bale. Thus, the incline conveyor served as a sort of escalator to load the cotton into the gravity-fed bailing equipment. Unlike the horizontal conveyors that moved cotton samples over large distances throughout the USDA facility, the purpose of the incline conveyor manufactured by the defendant was to transport the cotton fragments the short distance from floor level to the top of the hopper so that the fragments could be loaded into the gravity-fed bailing equipment. Further, like a piece of factory machinery or a trade fixture, it appears that the incline conveyor and related equipment could be installed and function properly in any number of industrial buildings. The issue for the Court then becomes determining whether this piece of industrial equipment is to be classified as a permanent improvement to the USDA facility in which it was originally installed in 1985.

In examining the particular facts of this case, and in light of the caselaw discussed, the Court is not prepared to reach the conclusion that the incline conveyor system is a permanent improvement to real property. Although the incline conveyor was bolted down and hardwired to the facility's electrical system, these factors alone are not dispositive. These factors appear necessary for proper functioning of the incline conveyor and baling equipment, and are not necessarily indicative of a permanent installation. However, the conveyor system in this case is not only capable of being moved, but was actually disassembled and moved to a new location. That fact is important. It is undisputed that the system was disassembled in 1994, transported, and reinstalled in a new USDA facility. This move was made with the involvement of the defen-

dant, who sent a Continental employee to the new facility for some level of oversight during the reassembly. (Dep. Harrington 34:19–35:15). While caselaw does not support a conclusion that such a move would reset or toll the statute of repose, the movement does provide evidence that the initial installation was not intended to be permanent. Although the South Carolina courts have noted that "[p]ermanence is necessarily a relative term when applied to improvements" as no improvement is "truly permanent," *South Carolina Pipeline Corp. v. Lone Star Steel Co.*, 345 S.C. 151, 546 S.E.2d 654, 657 at n. 3 (2001), the movement of the conveyor system does weigh heavily with the Court.

Additionally, it does not appear that the disassembly or movement of this equipment was a peculiar or abnormal occurrence. The defendant has noted that the system at issue in this case was originally sold in 1985 "as part of a sale of similar systems to three other USDA classing offices." (Def.'s Mot. for Summ. J. at p. 3, Doc. # 33). Evidence in the record indicates that each of the additional three incline conveyor systems sold to the USDA in 1985 have apparently been moved to different facilities as well. (Dep. Harrington 100:8–20). Thus, it appears that the incline conveyor and related equipment was not only capable of being moved, but was readily moveable. Much like a piece of factory machinery, the incline conveyor system was capable of being disassembled and moved to other facilities when the real property requirements of the owner shifted.

Further, the Court concludes that the physical characteristics of the incline conveyor system at issue in this case distinguish it from the conveyors in the cases cited by the defendant. In *Anderson v. M.W. Kellogg Co.*, 766 P.2d 637 (1988), the court noted that the "sheer size of the

conveyor alone (over two stories high and several hundred feet long) suggests the lack of mobility which typically characterizes an ordinary improvement." *Id.* at 641 (parentheses in original). Further, time was a factor which weighed heavily in many of the other cases, as several of the conveyors had been in place for a number of decades. In *Hilliard v. Lummus Co., Inc.*, 834 F.2d 1352, 1355 (7th Cir.1987), the conveyor system at issue had been in place for approximately 31 years and had been installed "along with the construction of the building and has remained there ever since." Similarly, *Adair v. Koppers Co., Inc.*, 741 F.2d 111 (6th Cir.1984), involved a conveyor which had been in place for approximately 67 years at the time of the accident which prompted the lawsuit. The court in *Adair* concluded that the "degree of physical annexation, combined with the length of time the system has remained intact, despite the sale of the property," supported a finding that the conveyor system was a "permanent installation" under the relevant statute of repose. *Id.* at 115–16. Finally, *McCormick v. Columbus Conveyer Co.*, 522 Pa. 520, 564 A.2d 907 (1989), involved a conveyor system that had been in place for approximately 36 years at the time of the accident. The court in the case noted that the system was "integrated into the construction" of the building in which it was housed, and that the conveyor system "was uniquely suited to that site." *Id.* at 910. Again, the analysis in these cases is persuasive and consistent with the conclusions reached by South Carolina courts cited herein.

However, unlike the conveyor systems in these cases, the incline conveyor system at issue in this case was not specifically integrated into the construction of the USDA Cotton Classing Office, nor was the conveyor annexed to a single piece of real property for an extended period of time. Like a piece of industrial equipment, the conveyor is capable of being transferred to a new location as the real property needs of the equipment owner change. In fact, not only was the incline conveyor system in this case moved, with the involvement of the defendant, all other conveyors sold to the USDA as part of a sale of four systems in 1985 were apparently moved to new locations.

The Court finds that the factual circumstances of this case more closely parallel those in the cases of *Tropello v. Mathews Conveyor Co.*, 1994 WL 161380 (E.D.Pa. 1994), *Cosse v. Allen–Bradley Co.*, 601 So.2d 1349, 1354 (1992), and *Aly v. Federal Express, Inc.*, 2008 WL 4378233 (D.N.J. 2008), in which courts did not apply the statute of repose. Like the equipment at issue in these cases, the incline conveyor system manufactured by the defendant is a relatively small-scale conveyor system. Further, like the conveyors in both *Tropello* and *Cosse*, this conveyor system was eventually taken out of use or removed from the real property on which it was originally annexed. *See Tropello*, 1994 WL 161380 at *2 ("The conveyor system at the Philadelphia bakery was dismantled in 1992 and was sold for scrap"); *Cosse*, 601 So.2d at 1354 ("The conveyor apparently was suspended form the floor of the building with bolts ... [t]he conveyor is no longer in use.") Finally, as in *Tropello* in which "[s]imilar conveyor systems had been disassembled and moved by [the owner] to other ... plants," 1994 WL 161380 at *2, each of the other systems that the defendant in this case provided to the same owner were apparently disassembled and moved to other facilities at some point. Although the legal standards governing these cases arguably vary in detail from those applied in this case, the factual situations are analogous.

In examining the facts and circumstances specific to this case in accordance

with the mandates of South Carolina precedent, the Court is not prepared to reach the conclusion that the incline conveyor system at issue is covered by the South Carolina statute of repose. As noted above, South Carolina courts have had few, though significant, opportunities to apply the statute of repose in the context of improvements to real property. In all decisions found and noted relevant to this case, the South Carolina courts applied the statute of repose to items that fit the definition of improvement outlined in *South Carolina Pipeline Corp. v. Lone Star Steel Co.*, 345 S.C. 151, 546 S.E.2d 654 (2001). Although a close question of law, this Court does not conclude that the South Carolina courts would apply the statute of repose to the piece of moveable industrial equipment at issue in this case. Further, in light of the facts specific to this case discussed herein, the Court concludes that this is not an appropriate case to apply the statute of repose and extend the parameters of the statute beyond those which have been set by the South Carolina courts. For these reasons, the defendant's motion for summary judgment "Based on South Carolina's Statute of Repose for Improvements to Real Estate" is denied. (Doc. # 34).

## II. Substantive Products Liability Issues

The defendant has filed a separate motion for summary judgment "Regarding Substantive Product Liability Issues" which arise under state law. (Doc. # 33). The Court will address each of the arguments raised within this motion in turn.

### A. Comparative Fault

■ The defendant has asserted that evidence of the plaintiff's overwhelming negligence bars any recovery as a matter of law. South Carolina has adopted a system of comparative negligence which applies to tort actions in this state. *Nel-*

*son v. Concrete Supply Co.*, 303 S.C. 243, 399 S.E.2d 783 (1991). Under this system of modified comparative negligence, "a plaintiff in a negligence action may recover damages if his or her negligence is not greater than that of the defendant." *Id.* at 784. The courts have recognized that "[o]rdinarily, comparison of the plaintiff's negligence with that of the defendant is a question of fact for the jury to decide." *Bloom v. Ravoira*, 339 S.C. 417, 529 S.E.2d 710, 713 (2000) (citing *Creech v. South Carolina Wildlife and Marine Resources Dep't*, 328 S.C. 24, 491 S.E.2d 571, 575 (1997)). In comparative negligence cases, "the trial court should only determine judgment as a matter of law if the sole reasonable inference which may be drawn from the evidence is that the plaintiff's negligence exceeded fifty percent." *Id.* In a case in which "evidence of the plaintiff's *greater* negligence is overwhelming, evidence of slight negligence on the part of the defendant is simply not enough for a case to go to a jury." *Id.* at 714 (emphasis in original).

■ The Court has conducted an extensive review of the record in this case, including a review of the plaintiff's conduct. However, based on this record, the Court cannot conclude that the evidence supports a finding that the plaintiff's negligence exceeded that of the defendant as a matter of law. The record reveals a factual debate over multiple issues affecting the calculation of each party's relative negligence. The factual debate in this case is such that the comparative fault of each party must be determined by a jury, and should not be resolved by the Court as a matter of law at the summary judgment stage in the litigation. For this reason, the defendant's motion for summary judgment based on the comparative fault of the plaintiff is denied.

## B. Assumption of the Risk

The defendant has also moved for summary judgment on the ground that the plaintiff's assumption of the risk of injury bars all recovery in this case. South Carolina courts have concluded that "[l]ike the defense of contributory negligence, the affirmative defense of assumption of risk ordinarily presents a question of fact for determination by the jury." *Broom v. Southeastern Highway Contracting Co., Inc.*, 291 S.C. 93, 352 S.E.2d 302, 306 (Ct.App.1986). However, "[u]nlike contributory negligence, which is based on carelessness, inadvertence, and unintended events, assumption of risk requires an intelligent and deliberate choice to assume a known risk." *Id.* (internal citations omitted). In this state, "there are four requirements to establishing the defense of assumption of risk: (1) the plaintiff must have knowledge of the facts constituting a dangerous condition; (2) the plaintiff must know the condition is dangerous; (3) the plaintiff must appreciate the nature and extent of the danger; and (4) the plaintiff must voluntarily expose himself to the danger." *Davenport v. Cotton Hope Plantation Horizontal Prop. Regime*, 333 S.C. 71, 508 S.E.2d 565, 569 (1998) (citing *Senn v. Sun Printing Co.*, 295 S.C. 169, 367 S.E.2d 456 (Ct.App.1988)). In addition, the "trial court may declare the plaintiff assumed the risk as a matter of law where it clearly appears that the plaintiff freely and voluntarily exposed himself to a known danger and understood and appreciated the danger." *Broom*, 352 S.E.2d at 306–07.

Again, the record before the Court does not establish that the plaintiff's assumption of the risk bars his recovery as a matter of law. The plaintiff did acknowledge that he knew he could be hurt if his arm was caught in the conveyor. (Dep. Ervin 84:4–7). That is compelling. However, the plaintiff also testified that he did not understand the nature and extent of the risk posed by the conveyor system, noting that "the last thing I thought was that it was going to pull my arm off. I wouldn't even—I wouldn't have never even gotten in the hole ... [i]t wouldn't have been my job if I thought that was a possibility that that could even happen." (Dep. Ervin 155:1–6). Based on an extensive review of the record and the facts noted, the Court concludes that the defense of assumption of the risk creates a factual question that is properly before a jury. For this reason, the defendant's motion for summary judgment based on the plaintiff's assumption of the risk is denied.

## C. Unforeseeable Modification

The defendant next contends that a substantial, unforeseeable modification was made to the conveyor system after it left the defendant's control which was the cause of the plaintiff's injuries. Indeed, the record before the Court indicates that the access hole through which the plaintiff was reaching at the time of his injury was created by an unknown third party without the involvement of the defendant. That is an important fact.

South Carolina Code § 15–73–10 imposes strict liability on the manufacturer of a defective product, provided that the product "is expected to and does reach the user or consumer without substantial change in the condition in which it is sold." South Carolina courts have noted that "if it can be shown that [a] product was (1) materially altered before it reached the injured user and (2) such alteration could not have been expected by the manufacturer or seller, then the manufacturer or seller is not liable." *Fleming v. Borden*, 316 S.C. 452, 450 S.E.2d 589, 592–93 (1994); *see also Kennedy v. Custom Ice Equip. Co., Inc.*, 271 S.C. 171, 246 S.E.2d 176 (1978).

■ The South Carolina Supreme Court has added that when "an alteration to the product is shown, it is sometimes forgotten that the foreseeability of the alteration must also be examined." *Fleming*, 450 S.E.2d at 593. Thus, "in a products liability case, liability may be imposed upon a manufacturer or seller notwithstanding subsequent alteration of the product when the alteration could have been anticipated by the manufacturer or seller." *Small v. Pioneer Mach., Inc.*, 329 S.C. 448, 494 S.E.2d 835, 844 (Ct.App. 1998). As there appears to be no dispute that the conveyor system was modified by a third party after it left the control of the defendant, the Court must examine the foreseeability of this modification.

■ In cases presenting a legitimate dispute as to the foreseeability of a modification, South Carolina courts have consistently held that the resolution of the dispute is properly before a jury. *See Kennedy v. Custom Ice Equip. Co., Inc.*, 271 S.C. 171, 246 S.E.2d 176 (1978); *Fleming v. Borden, Inc.*, 316 S.C. 452, 450 S.E.2d 589 (1994); *Small v. Pioneer Mach., Inc.*, 329 S.C. 448, 494 S.E.2d 835 (Ct.App.1998). There is evidence in the record to show that the accumulation of cotton at transfer points between conveyor systems was a common problem of which the defendant had knowledge. (Dep. Harrington 110:18–111:7). Further, there is evidence in the record to indicate that the incline conveyor involved in this case may have been exhibiting this problem since its initial installation. (Dep. Harrington 109:16–25). Evidence also shows that the defendant may have provided additions in an attempt to correct various problems with the incline conveyor caused by an over-accumulation of cotton at transfer points in the machine. (Dep. Harrington 76:14–77:12). Based on the record in this case, the Court cannot determine that it was unforeseeable, at the time that the conveyor system was initially sold, that faulty modifications may be made to address the over-accumulation of cotton at the lower belt pulley. It will be up to the jury to weigh this evidence, and to determine whether the modification to the incline conveyor system was foreseeable. However, the Court is not prepared to conclude, as a matter of law, that the modification was unforeseeable. For this reason, the defendant's motion for summary judgement based on an unforeseeable modification is denied.

### D. Defectiveness Under South Carolina Law

In its final ground for summary judgment, the defendant briefly argues that the plaintiff's experts have failed to present evidence that the incline conveyor system is defective under any test recognized by South Carolina law. South Carolina Code provides that "[o]ne who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm caused to the ultimate user or consumer." S.C.Code § 15–73–10. The defendant aptly points out that the incline conveyor system, as originally manufactured, provided no access to the lower belt pulley which injured the plaintiff. The defendant contends, therefore, that the conveyor cannot conceivably be classified as "unreasonably dangerous to the user or consumer" under South Carolina law.

■ However, as noted above, evidence in the record establishes a question of fact as to whether the incline conveyor system was defective due to its propensity to collect cotton around the lower belt pulley. The record also establishes a question as to whether it was necessary for users to have constant access to the lower belt pulley, and whether it would be foreseeable that an end user would modify

the incline conveyor housing to provide this access to the lower belt pulley. In addition, evidence in the record indicates that a safety-interlocked access point may be a necessary feature on such a conveyor system. (Expert Report McCarthy pp. 1–2) (Dep. Harrington 129:18–130:3). Further, the failure to provide safety interlocks or limit switches on access points to industrial machinery can create a question of fact regarding defectiveness for resolution by a jury. *See Campbell v. Gala Indus., Inc.,* 2006 WL 1073796, *4 (D.S.C. 2006). This Court concludes that there is a question of fact as to whether the lack of a safety-interlocked access point to an area known to cause problems within the incline conveyor rendered the product defective as it was originally sold. Therefore, the defendant's motion for summary judgment based on the plaintiff's failure to present evidence that the incline conveyor was defective under South Carolina law is denied.

Finally, the Court notes that the defendant submitted a supplemental brief requesting that the Court "include, if necessary to the ruling, a determination as to whether or not Continental owes [plaintiff] any legal duty based on post sale conduct." (Def.'s Supplemental Mem. at p. 1, Doc. # 48). It is not clear to the Court that the plaintiff has made any allegations or claims for relief based on the post-sale duties of the defendant, thus no ruling is necessary on this issue at this time. However, for purposes of clarification, the Court directs the parties' attention to the cases of *Bragg v. Hi–Ranger, Inc.,* 319 S.C. 531, 462 S.E.2d 321, 331 (Ct.App.1995) (trial court correctly charged jury that there is no-post sale duty to retrofit products) and *Campbell v. Gala Industries, Inc.,* 2006 WL 1073796, *4–5 (D.S.C.2006) (South Carolina courts have not recognized post-sale duty to warn or retrofit).

## CONCLUSION

For the reasons set forth in this Order, defendant's motion for summary judgment "Based on South Carolina's Statute of Repose for Improvements to Real Estate," (Doc. # 34), and defendant's motion for summary judgment "Regarding Substantive Product Liability Issues," (Doc. # 33), are denied.

**IT IS SO ORDERED.**