556 S.E.2d 377

**OCEAN WINDS CORPORATION OF
JOHNS ISLAND, Plaintiff,**

v.

**Lee LANE d/b/a Lane Drywall and Plastering, Pelham Roofing and Sheet Metal Works, Inc., and Andersen Windows, Inc., of whom Andersen Windows, Inc., is the party answering the Certified Question, Defendants.**

No. 25380.

Supreme Court of South Carolina.

Heard Oct. 9, 2001.

Decided Nov. 26, 2001.

W. Jefferson Leath, Jr., and G. Hamlin O'Kelley, III, of Leath, Bouch & Crawford, L.L.P., of Charleston, and W.H. Bundy, Jr., of Smith, Bundy, Bybee & Barnett, P.C., of Charleston, for Plaintiff.

G. Dana Sinkler and Margaret K. Manuel, of Warren & Sinkler, L.L.P., of Charleston, for Defendant Andersen Windows, Inc.

Justice PLEICONES.

We accepted this certified question from the United States District Court to determine whether certain events trigger the running of the statute of repose codified at S.C.Code Ann. § 15–3–640 (Supp.2000).

## FACTS

The district court made the following findings of fact: Plaintiff Ocean Winds Corporation of Johns Island ("Ocean Winds") developed, built, and owned a condominium project on Seabrook Island. In April 1997, Ocean Winds Council of Co–Owners sued Ocean Winds in its capacity as owner/developer/builder for water damage and other structural problems with the property. Ocean Winds thereafter filed suit against the defendants, including Andersen Windows ("Andersen"), seeking recovery for any damages Council of Co–Owners might recover from Ocean Winds. Andersen manufactured and supplied the windows used in the condominium project. The windows were installed no later than December 2, 1986. This case was not commenced against Andersen until February 2000, more than thirteen years after the installation of the windows. Certificates of Occupancy were issued for the various units between June 9, 1987, and May 6, 1991.

## CERTIFIED QUESTION

Where the owner/developer/builder of a building brings a lawsuit against a window manufacturer/supplier for allegedly defective windows, installed as an improvement during the construction of that building, for purposes of the statute of repose, S.C.Code Ann. § 15-3-640 (Supp.2000), does the "substantial completion of such improvement" occur upon substantial completion of the installation of the windows or upon substantial completion of the building as a whole?

## DISCUSSION

■ Section 15-3-640 provides, in part:

No actions to recover damages based upon or arising out of the defective or unsafe condition of an improvement to real property may be brought more than thirteen years after substantial completion of such an improvement. For purposes of this section, an action based upon or arising out of the defective or unsafe condition of an improvement to real property includes:

. . .

(6) an action for contribution or indemnification for damages sustained on account of an action described in this subdivision; . . .

(9) an action against owners or manufacturers of components, or against any person furnishing materials, or against any person who develops real property, or who performs or furnishes the design, plans, specifications, surveying, planning, supervision, testing, or observation of construction, or construction of an improvement to real property, or a repair to an improvement to real property . . . .

"Substantial completion" is defined in S.C.Code Ann. § 15-3-630 (1976) as "that degree of completion of a project, improvement, or a specified area or portion thereof . . . upon attainment of which the owner can use the same for the purpose for which it was intended . . . ."

■ The cardinal rule of statutory construction is that legislative intent prevails. Statutory provisions should be given a reasonable and practical construction consistent with

the purpose and policy expressed in the statute.  *Folk v. Thomas,* 344 S.C. 77, 81, 543 S.E.2d 556, 558 (2001).

Ocean Winds argues the thirteen year period set forth in § 15–3–640 did not begin to run until certificates of occupancy were issued for the various units.   Conversely, Andersen argues the period should run from the date installation of the windows was completed, despite the fact that certificates of occupancy were not issued until some time later.

We hold that the thirteen year period prescribed in the statute of repose began running when installation of the windows was complete.  The definition of "substantial completion" contained in § 15–3–630 requires this result.  The legislature defines "substantial completion" as "that degree of completion of a project, improvement, or *a specified area or portion thereof* ... upon attainment of which *the owner can use the same for the purpose for which it was intended* ...." (Emphasis supplied).

Here the windows were "a specified area or portion" of the larger condominium project.   Upon their incorporation into the larger project, which occurred no later than December 2, 1986, the owner, Ocean Winds Corporation, could use the windows "for the purpose for which [they were] intended." Andersen should have been able to assume with confidence that it would not be amenable to suit as of December 3, 1999, thirteen years and one day after its windows were installed, and its portion of the project was substantially complete.

We find additional support for this conclusion in the preamble to § 15–3–640.[1]   The preamble provides

Whereas, the General Assembly finds that persons involved in improvements to real property are subject to the economic and emotional burdens of litigation and liability for an indefinite period of time upon allegations of defective or unsafe conditions;  and. [sic]

Whereas, the General Assembly finds it in the public interest to provide a measure of protection against claims and litigation arising years after substantial completion of an improvement to real property;  and. [sic]

---

1.  In determining legislative intent, the Court may be guided by a statute's preamble.  *State v. Thrift,* 312 S.C. 282, 440 S.E.2d 341 (1994).

Whereas, the General Assembly finds that substantial differences exist between improvements to real property and other activities for which liability may be alleged, including the fact that improvements to real property have lengthy useful lives and are utilized, changed, and affected by many people, forces, and things after completion; and. [sic]

Whereas, the General Assembly finds it reasonable and necessary to distinguish between a person in actual possession or control of an improvement to real property and those otherwise involved in an improvement to real property, for the following reasons: because acceptance of some future responsibility for the condition of the premises is implied in the acceptance of an improvement to real property; because possession or control of the premises is a reasonable and fair basis for imposing some additional liability; because after the date of acceptance of the work by the owner, there exists the possibility of neglect, abuse, poor maintenance, mishandling, improper modification, or unskilled repair of an improvement; because owners and persons in control have the opportunity to avoid liability by taking care of the improvement and by regulating its use. . . .

Thus, the preamble indicates that the legislature sought to address those instances where "persons involved in improvements to real property are subject to the economic and emotional burdens of litigation and liability for an indefinite period of time upon allegations of defective or unsafe conditions."

Adopting Ocean Winds' interpretation would frustrate the legislature's intent in enacting the statute of repose. In the instant case, for example, installation of the windows was unquestionably completed by December 2, 1986. The windows first became subject to the forces of nature and the "possibility of neglect, abuse, poor maintenance, mishandling, improper modification, or unskilled repair" on that date. However, certificates of occupancy were not issued on all units until May 6, 1991, nearly four and a half years later. The legislature could not have intended that the date upon which a subcontractor—clearly a "person[ ] involved in improvements to real property"—becomes free from liability with regard to a particular job hinges upon the diligence of the general contractor

and/or developer in completing construction. To so hold would subject the subcontractor to "the economic and emotional burdens of litigation and liability for an indefinite period of time." The purpose of the statute of repose is served where the period prescribed therein begins to run on the date installation and incorporation into the larger improvement is complete, rather than the date on which certificates of occupancy are issued. It is the date of installation and incorporation which marks the point in time when the windows are first "utilized, changed, and affected" by "people, forces, and things" beyond Andersen's control.

Our holding is consistent with decisions in a number of other jurisdictions addressing the issue. *E.g. Industrial Risk Insurers v. Rust Engr. Co.*, 232 Cal.App.3d 1038, 283 Cal.Rptr. 873 (1991) (a defendant's services with respect to an improvement may be completed well before the improvement itself is finished; if the limitations period does not commence until substantial completion of the larger improvement, construction industry members may be subject to liability for an indefinite time after the substantial completion of their work); *Fueston v. Burns & McDonnell Engr. Co., Inc.*, 877 S.W.2d 631 (Mo.Ct.App.1994) (where plaintiffs allege a defect in a component improvement, incorporated within a larger improvement, it is the date on which the defective improvement was completed, and not the date on which the larger improvement is completed, that is relevant to the determination whether the statute of repose bars the plaintiffs' action); *Gordon v. Western Steel Co.*, 950 S.W.2d 743 (Tex.App.1997) (where different subcontractors are responsible for the construction of different parts of a larger project, the statute of repose should be applied to each of those individual subcontractors when they complete their respective improvements); *contra Patraka v. Armco Steel Co.*, 495 F.Supp. 1013 (M.D.Pa.1980) (by employing the term 'after completion of an improvement,' state legislature intended to mark the commencement of the limitations period as that point when third-parties would be exposed to defects in design or construction).

## CONCLUSION

We answer the certified question as follows: For purposes of § 15–3–640, and under the facts of this case, "substantial

completion of such improvement" occurred upon substantial completion of the installation of the windows and not upon substantial completion of the project as a whole, nor on the date of issuance of certificates of occupancy.

TOAL, C.J., MOORE, WALLER and BURNETT, JJ., concur.