802 S.E.2d 794

Paula FULLBRIGHT and Mark Fullbright, Plaintiffs,

v.

SPINNAKER RESORTS, INC., d/b/a Spinnaker
Resorts South Carolina, Inc., Defendant.

and

Paul Chenard and Rebecca Chenard, Plaintiffs,

v.

Hilton Head Island Development Co., L.L.C., d/b/a Coral
Resorts and Sunrise Vacation Properties, Ltd., d/b/a
Coral Resorts, Defendants.

James Nichols and Irene Nichols, Plaintiffs,

v.

Hilton Head Island Development Co., L.L.C., Sunrise Vacation
Properties, Ltd., Sherri J. Smith, Patrick Budnik, and Robert
Lauderman, d/b/a Coral Resorts, Defendants.

Linda Renchkovsky, Plaintiff,

v.

Coral Resorts, L.L.C. and Sunrise Vacation Properties,
Ltd., d/b/a Coral Resorts, Defendants.

Robert Curry, Jr. and Monica R. Curry, Plaintiffs,

v.

Hilton Head Island Development Co., L.L.C., d/b/a Coral
Resorts and Sunrise Vacation Properties, Ltd., d/b/a
Coral Resorts, Defendants.

Charles Olenick and Karen Maniscalco, Plaintiffs,

v.

Coral Resorts, L.L.C. and Sunrise Vacation Properties,
Ltd., d/b/a Coral Resorts, Defendants.

Phillip Ross and Kimberly Ross, Plaintiffs,

v.

Hilton Head Island Development Co., L.L.C., Sunrise Vacation
Properties, Ltd., Sherri J. Smith, David Watson, and
Sheldon Stanhope, Defendants.

Appellate Case No. 2016-001765, Appellate Case No. 2016-001766
Opinion No. 27720

Supreme Court of South Carolina.

Heard February 8, 2017

Filed May 17, 2017
Rehearing Denied August 22, 2017

Joseph DuBois and Zach S. Naert, both of Naert & DuBois, L.L.C., of Hilton Head Island, for Plaintiffs.

Barry L. Johnson, of Johnson & Davis, P.A., of Bluffton, for Defendant Spinnaker Resorts, Inc., d/b/a Spinnaker Resorts South Carolina, Inc. Nekki Shutt, Kathleen M. McDaniel, and Jacqueline M. Pavlicek, all of Callison Tighe & Robinson, L.L.C., of Columbia, for Defendants Coral Resorts, L.L.C. and Hilton Head Island Development Co., L.L.C.; Thornwell F. Sowell, III and Bess J. DuRant, both of Sowell Gray Stepp & Laffitte, L.L.C., of Columbia, for Defendants Sunrise Vacation Properties, Ltd., Sherri J. Smith, David Watson, Sheldon Stanhope, and Robert Lauderman; and James E. Smith, Jr., of James E. Smith, Jr., P.A., of Columbia, for Defendants.

Angus H. Macaulay and Michael P. Scott, both of Nexsen Pruet, LLC, of Columbia, for amicus curiae, American Resort Development Association. R. Hawthorne Barrett, of Turner Padget Graham & Laney, P.A., of Columbia, for amicus curiae, Myrtle Beach Area Chamber of Commerce.

## CERTIFIED QUESTIONS

JUSTICE KITTREDGE:

The Court agreed to answer the following certified questions from the United States District Court for the District of South Carolina:

1. Does the South Carolina Real Estate Commission have exclusive jurisdiction to determine whether a violation of the South Carolina Vacation Time Sharing Plans Act [1] (the Timeshare Act) has occurred?

2. Is the South Carolina Real Estate Commission's determination of a violation of the Timeshare Act a condition precedent to a purchaser bringing a private cause of action to enforce the provisions of the Timeshare Act?

3. Are the South Carolina Real Estate Commission's determinations as to whether the Timeshare Act was violated binding on courts of the judicial branch?

These questions arose from two sets of litigation (*Fullbright* and *Chenard*) in the federal district court involving individuals (collectively, Plaintiffs) who entered into contracts with developers (collectively, Defendants) to purchase interests in vacation time sharing plans (timeshare plans) for real estate on Hilton Head Island. As these cases present the same legal questions, they were consolidated for oral argument before the Court. We now resolve them in a single opinion.

Because the Timeshare Act contains an unambiguous provision authorizing a purchaser or lessee to bring a private action to enforce the Act, we are constrained to answer the first two questions "no." We also answer the third question "no," provided the South Carolina Real Estate Commission's decision has not been subjected to judicial review.

## I.

On June 24, 2014, Paula and Mark Fullbright (the Fullbrights) entered into a contract with Spinnaker Resorts, Inc. (Spinnaker) to purchase an interest in a timeshare plan for the company's Hilton Head resort, Bluewater by Spinnaker (Bluewater). The Fullbrights commenced a purported class action

1. S.C. Code Ann. §§ 27-32-10 to -410 (2007 & Supp. 2016).

against Spinnaker on April 2, 2015, and filed an amended complaint on May 20, 2015, alleging Spinnaker violated the Timeshare Act by failing to comply with the Act's registration requirements.[2] The Fullbrights sought the return of all money paid under the contract, with interest, as well as a declaration that the contract was invalid and nonbinding.

After the Fullbrights filed the lawsuit, the South Carolina Real Estate Commission (the REC) issued an order dated September 15, 2015,[3] stating that Bluewater had been issued an order of registration effective September 2, 2014. Significantly, the REC order provided that Bluewater's registration was retroactive to March 15, 2006. The retroactive registration was significant in that the REC sought to deem Bluewater's registration in effect on the date of the Fullbrights' purchase. Spinnaker moved to dismiss the complaint for lack of subject matter jurisdiction, but the federal district court, believing the case involved novel questions of South Carolina law, denied the motion.

Like the Fullbrights, the plaintiffs in the *Chenard* cases are individuals that entered into contracts to purchase interests in timeshare plans for Hilton Head resorts. In addition to claims for violations of the Timeshare Act, they brought claims for, among other things, fraud, negligent misrepresentation, and violations of the South Carolina Unfair Trade Practices Act.[4] Their claims under the Timeshare Act included allegations that the timeshare plans they agreed to were not properly registered with the REC, and they sought to void their purchase contracts. The *Chenard* defendants moved to dismiss the Timeshare Act claims, arguing that the REC has exclusive

---

**2.** These requirements are discussed *infra*, Part II.B.

**3.** Although the final order was dated September 15, the REC apparently reached this decision at a meeting held on August 20. The Fullbrights accuse Spinnaker of going behind their backs by seeking to have this meeting occur in private. In any event, the parties agree that the Fullbrights did not attend the meeting and they were unsuccessful in their attempts to intervene and appeal the REC's decision.

**4.** S.C. Code Ann. §§ 39-5-10 to -180 (1985 & Supp. 2016). Whatever relief the *Chenard* plaintiffs may be entitled to on these claims, we make clear now that the remedy for a violation of the Timeshare Act is limited to that found in the Act itself—the rescission of the purchase contract and a refund of all consideration paid. *See id.* § 27-32-120(C) (2007).

jurisdiction to investigate violations of the Act and, therefore, the court lacked subject matter jurisdiction. The court denied the motion, stating that the Timeshare Act "also contemplates a private right of action." *Chenard v. Hilton Head Island Dev. Co.*, No. 9:14-3347-SB, 2016 WL 7183047, at *3 (D.S.C. Mar. 30, 2016). The court also noted that there were cases involving similar allegations currently pending in state court and, to minimize conflicts between the ongoing state and federal litigation on this novel issue, solicited proposed questions for certification to this Court. *See id.* at *1, *3 n.4.

After further briefing by the parties, the court issued certification orders, and we agreed to answer the questions listed above. In answering these questions, we express no opinion as to the merits of Plaintiffs' claims, the resolution of which remains in the federal district court.

## II.

The questions posed to the Court are aimed at clarifying the extent of the REC's authority to regulate the time sharing industry and what role, if any, the courts have in that process. Plaintiffs argue they have a constitutional and statutory right to initiate judicial proceedings without regard for the REC's actions, whereas Defendants argue public policy requires the REC have broad and exclusive jurisdiction to enforce the Timeshare Act.

## A.

 In resolving this dispute, we must be cognizant of our role as a court. Defendants frame these certified questions in terms of public policy, appeals to which dominate their arguments. Determinations of public policy, however, are chiefly within the province of the legislature, whose authority on these matters we must respect. *See, e.g., Taghivand v. Rite Aid Corp.*, 411 S.C. 240, 244, 768 S.E.2d 385, 387 (2015) (recognizing that the " 'primary source of the declaration of the public policy of the state is the General Assembly; the courts assume this prerogative only in the absence of legislative declaration' " (quoting *Citizens' Bank v. Heyward*, 135 S.C. 190, 204, 133 S.E. 709, 713 (1925))). "The General Assembly has a right to pass such legislation as in its judgment may

seem beneficial to the State, and to create such agencies of government as may be necessary to carry out its purpose, unless expressly prohibited by the Constitution." *Clarke v. S.C. Pub. Serv. Auth.*, 177 S.C. 427, 438–39, 181 S.E. 481, 485 (1935).

When examining statutes, "[t]he cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature." *Brown v. Bi-Lo, Inc.*, 354 S.C. 436, 439, 581 S.E.2d 836, 838 (2003) (citing *Charleston Cty. Sch. Dist. v. State Budget & Control Bd.*, 313 S.C. 1, 5, 437 S.E.2d 6, 8 (1993)). "If a statute's language is plain, unambiguous, and conveys a clear meaning[,] 'the rules of statutory interpretation are not needed and the court has no right to impose another meaning.' " *Id.* (quoting *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000)). "On the other hand, where a statute is ambiguous, the Court must construe the terms of the statute." *Wade v. Berkeley County*, 348 S.C. 224, 229, 559 S.E.2d 586, 588 (2002). "A statute as a whole must receive practical, reasonable, and fair interpretation consonant with the purpose, design, and policy of lawmakers." *State v. Henkel*, 413 S.C. 9, 14, 774 S.E.2d 458, 461 (2015) (citation and internal quotation marks omitted). "Moreover, it is well settled that statutes dealing with the same subject matter are *in pari materia* and must be construed together, if possible, to produce a single, harmonious result." *Beaufort County v. S.C. State Election Comm'n*, 395 S.C. 366, 371, 718 S.E.2d 432, 435 (2011).

### B.

The Timeshare Act establishes procedures governing the offering and sale of timeshare plans in South Carolina. These plans, which may or may not include an ownership interest in the subject property, are arrangements by which the purchaser acquires the right to use real estate and associated facilities for a period of time during the year. S.C. Code Ann. § 27-32-10(7)–(9) (2007). "[T]he [REC], as part of its regulatory mandate, scrutinizes the practices and procedures of persons developing or selling interests in vacation time sharing plans in this State...." *Id.* § 27-32-405(L) (Supp. 2016).

The Timeshare Act prohibits developers from advertising or selling plans that have not been registered with the REC. *Id.* § 27-32-20(1) (2007); *see also id.* § 27-32-190(A) (2007). To register a plan, the applicant must submit numerous documents to the REC, including copies of the proposed sales contract, advertising materials, and any regulations on the use of the property the applicant intends to impose. *Id.* § 27-32-20(2) (2007). If the REC determines the materials comply with the Timeshare Act, the REC is directed to issue an order approving their use, at which point the plan is considered registered. *Id.* § 27-32-20(3) (2007).

Section 27-32-190 of the South Carolina Code describes the application process and the REC's duties in more detail. Among other things, the REC must examine the applicant's advertising materials to ensure they are not misleading, make sure neither the seller nor any officer or principal thereof has been convicted of certain crimes within the past ten years, and satisfy itself that there are no encumbrances on the property that could diminish the purchaser's interest in, or use of, the property. *Id.* § 27-32-190(A)(1) (2007).

> Within thirty days from the date the [REC] receives an application for registration, the [REC] must enter an order registering the vacation time sharing plan or rejecting the registration. If an order of rejection is not entered within thirty days from the date of application, the vacation time sharing plan is considered registered unless the applicant has consented in writing to a delay.

*Id.* § 27-32-190(A)(2) (2007). In addition to the initial registration, a seller must obtain the REC's approval before making any substantial changes to a registered plan. *See id.* § 27-32-190(B)(5)(c) (2007).

To perform its duties, the REC is empowered to conduct investigations, issue subpoenas and cease-and-desist orders, and seek court orders compelling compliance with the REC's requests. *Id.* § 27-32-190(B) (2007). The REC can revoke a registration for a variety of reasons, including failing to comply with a cease-and-desist order or concealing a material fact in an application. *Id.* § 27-32-190(B)(7) (2007). As part of its "responsib[ility] for the enforcement and implementation of" the Timeshare Act, the REC can also direct the Department

of Licensing, Labor and Regulation to prosecute violations of the Act. *Id.* § 27-32-130 (2007). Critically for purposes of the certified questions before the Court, this authority "do[es] not limit the right of a purchaser or lessee to bring a private action to enforce the provisions of [the Timeshare Act]." *Id.*

## III.

### A. Jurisdiction and Condition Precedent (Certified Questions 1 and 2)

The answers to the first two certified questions flow directly from the language of section 27-32-130 of the South Carolina Code: "The provisions of this section do not limit the right of a purchaser or lessee to bring a private action to enforce the provisions of [the Timeshare Act]."

The first certified question asks us to determine whether the REC has exclusive jurisdiction to determine if a person has violated the Timeshare Act. Plaintiffs contend they have a clear statutory right to bring an action in the courts to seek redress for violations of the Timeshare Act. Defendants discount the clear language in section 27-32-130 and would have us declare the statute ambiguous, thereby allowing us to consider their argument that the state's public policy—as evidenced by the extensive regulatory framework created by the Timeshare Act—requires the REC's jurisdiction to be exclusive.

To the extent we decide courts have subject matter jurisdiction over these matters, the second certified question asks us if a finding by the REC of a violation is a condition precedent to bringing a claim under the Timeshare Act. Plaintiffs contend their right to file suit exists independently of the REC's authority, while Defendants argue the ability to file suit is contingent on a favorable ruling from the REC.

### 1. Jurisdiction

"Subject matter jurisdiction is the power to hear and determine cases of the general class to which the proceedings in question belong." *Dema v. Tenet Physician Servs.-Hilton Head, Inc.*, 383 S.C. 115, 120, 678 S.E.2d 430, 433 (2009) (citing *Skinner v. Westinghouse Elec. Corp.*, 380 S.C. 91, 93, 668 S.E.2d 795, 796 (2008)). In South Carolina, the

circuit courts "are vested with general original jurisdiction in civil and criminal cases, except those cases in which exclusive jurisdiction shall be given to inferior courts." *Id.* (citing S.C. Const. art. V, § 11). "In determining whether the Legislature has given another entity exclusive jurisdiction over a case, a court must look to the relevant statute." *Id.* at 121, 678 S.E.2d at 433.

The REC "is responsible for the enforcement and implementation of [the Timeshare Act] and the Department of Labor, Licensing and Regulation, at the request of the [REC], shall prosecute a violation under [the Timeshare Act]." S.C. Code Ann. § 27-32-130. For example, as noted above, the Timeshare Act requires all timeshare plans to be registered with the REC, and it tasks the REC with reviewing those plans. *Id.* § 27-32-190(A). The REC also has authority to investigate alleged violations[5] of the Timeshare Act and to issue orders and take other actions to ensure compliance with the Act's provisions. *Id.* § 27-32-190(B).

Defendants argue that this conferral of authority on the REC precludes the courts from hearing disputes arising under the Timeshare Act. Defendants note that the Timeshare Act is a comprehensive regulatory scheme intended both to protect consumers from unscrupulous business practices and to provide stability for developers. *Compare id.* § 27-32-405(E) (Supp. 2016) (acknowledging that "the purchaser of an interest in a vacation time sharing plan in this State is afforded significant and unique consumer protections not available to purchasers of other forms of real property"), *with id.* § 27-32-405(M) (Supp. 2016) (recognizing that "the economic health and continued stability of the vacation time sharing industry should be subject to the clear identification of various procedures involved in the purchase and sale of an interest in a vacation time sharing plan").

Defendants contend that the vitality of the timeshare industry relies on the REC's decisions being respected by the courts. If individuals are allowed to initiate proceedings in court, Defendants claim, the timeshare industry will be destabilized, with resulting negative impacts on the entire South

---

5. These include any "act of fraud, misrepresentation, or failure to make a disclosure of a material fact." S.C. Code Ann. § 27-32-110(11) (2007).

Carolina economy. Defendants also argue that allowing disgruntled purchasers to institute judicial proceedings will threaten the property rights of those that wish to maintain their timeshare interests.

We readily acknowledge there is considerable merit to Defendants' concerns, and we do not reject them lightly. However valid Defendants' concerns may be, they must yield to the plain language of a statute that commands a different result. *See Brown*, 354 S.C. at 439, 581 S.E.2d at 838 ("If a statute's language is plain, unambiguous, and conveys a clear meaning[,] the rules of statutory interpretation are not needed and the court has no right to impose another meaning." (citation and internal quotation marks omitted)). As Plaintiffs point out, the statute that gives the REC authority to enforce the Timeshare Act makes it clear that grant of authority does not interfere with their ability to bring a private action to do the same. *See* S.C. Code Ann. § 27-32-130. Given this unambiguous language, we would exceed our judicial role were we to allow Defendants' policy arguments to override the policy expressed by the General Assembly in section 27-32-130. Our rules of statutory interpretation thus require us to answer the first certified question "no."

### 2. Condition Precedent

For the same reasons, a finding by the REC of a statutory violation cannot be a condition precedent to bringing a private suit under the Timeshare Act. The plain language of section 27-32-130 imposes no such limit, and we are not free to judicially engraft the Defendants' desired limitation onto the statute. *See Grier v. AMISUB of S.C., Inc.*, 397 S.C. 532, 540, 725 S.E.2d 693, 698 (2012) ("[W]hen a statute is clear on its face, it is improvident to judicially engraft extra requirements to legislation . . . ." (internal quotation marks omitted)). "The legislature could very easily have created a condition precedent if it had so desired, in plain and unmistakable words; but it has not done so." *Small v. Nat'l Sur. Corp.*, 199 S.C. 392, 397, 19 S.E.2d 658, 660 (1942). Indeed, imposing the condition precedent Defendants seek would do precisely what section 27-32-130 prohibits—"limit the right of a purchaser or lessee to bring a private action to enforce the provisions of [the Timeshare Act]."

Again, we defer to the plain language of the Timeshare Act, which expressly recognizes a person's right to bring a civil action without regard for the REC's findings. *Cf. Ross v. Waccamaw Cmty. Hosp.*, 404 S.C. 56, 64, 744 S.E.2d 547, 551 (2013) (stating that "the Legislature would have used more exacting language had it intended ... to forever divest the circuit court of jurisdiction"). If the courts' jurisdiction to hear claims for violations of the Timeshare Act is to be limited—whether based on Defendants' public policy concerns or for any other reason—it must be the legislature that does so. Therefore, we answer the second certified question "no."

## B. Effect of the REC's Findings on the Courts (Certified Question 3)

The third certified question asks us to declare what effect a decision by the REC has on the judicial branch. Plaintiffs argue they have a constitutional right to challenge the REC's findings in court. Defendants cite two principles they claim require courts to accept the REC's findings: the "filed rate doctrine" and the doctrine of primary jurisdiction.

We are mindful that this question implicates the separation of powers vital to the proper functioning of our government [6] and reiterate that "the judicial branch retains the ultimate authority in deciding when agency decisions comport with established law. Thus, judicial review of administrative decisions requires a balancing between an agency's specialization and authority, and the checks and balances deeply rooted in our democratic government." *Kiawah Dev. Partners, II v. S.C. Dep't of Health & Envtl. Control*, 411 S.C. 16, 53, 766 S.E.2d 707, 728 (2014) (Toal, C.J., dissenting). We therefore hold that the REC's decisions must be subject to judicial review and answer the third certified question "no," as qualified below.

The state constitution declares, "No person shall be finally bound by a judicial or quasi-judicial decision of an administrative agency affecting private rights except on due notice and an opportunity to be heard ..., and he shall have in all such

---

**6.** *See* S.C. Const. art. I, § 8 (requiring "the legislative, executive, and judicial powers of the government" to "be forever separate and distinct from each other").

instances the right to judicial review." S.C. Const. art. I, § 22. The Administrative Procedures Act[7] (the APA) provides that "[i]n a contested case,[8] all parties must be afforded an opportunity for hearing after notice of not less than thirty days." [9] S.C. Code Ann. § 1-23-320(A) (Supp. 2016). "A party who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case is entitled to judicial review...." *Id.* § 1-23-380 (Supp. 2016). This entitlement "does not limit utilization of or the scope of judicial review available under other means of review, redress, relief, or trial de novo provided by law." *Id.* A court can reverse an agency's decision if, for example, the agency's decision was contrary to constitutional or statutory provisions or otherwise affected by an error of law. *Id.* § 1-23-380(5)(a), (d) (Supp. 2016); *see also id.* § 1-23-610(B)(a), (d) (Supp. 2016) (establishing the same grounds for reversal of a decision of the administrative law court).

Citing the filed rate doctrine and the doctrine of primary jurisdiction, Defendants argue the REC's decisions should not be subject to such review. The filed rate doctrine "stands for the proposition that because an administrative agency is vested with the authority to determine what rate is just and reasonable, courts should not adjudicate what a reasonable rate might be in a collateral lawsuit." *Edge v. State Farm Mut. Auto. Ins. Co.*, 366 S.C. 511, 517, 623 S.E.2d 387, 391 (2005) (citation and internal quotation marks omitted). However, the instant dispute clearly does not involve a challenge to a rate established by an administrative agency, and it appears Defendants' real aim in citing the doctrine is to leapfrog into policy arguments. Defendants argue the policy goals served by the doctrine—stability, uniformity, and finality—would also be served by giving the REC's decisions binding effect on the

---

7. S.C. Code Ann. §§ 1-23-10 to -680 (2005 & Supp. 2016).

8. A "contested case" is any "proceeding ... in which the legal rights, duties, or privileges of a party are required by law to be determined by an agency after an opportunity for hearing." *Id.* § 1-23-310(3) (2005).

9. We recognize that Plaintiffs were not parties in the proceedings before the REC. The Fullbrights attempted to intervene and appeal the REC's decision to the administrative law court but were prevented from doing so. *See supra* note 3.

courts. Defendants argue a contrary ruling will have widespread negative impacts on all regulated industries. Although we are not indifferent to these concerns, as we have already noted, Defendants' policy arguments are more appropriately addressed to the legislature. *See Taghivand*, 411 S.C. at 244, 768 S.E.2d at 387 (citation omitted).

The second doctrine cited by Defendants, the doctrine of primary jurisdiction,

> applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.

*United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956) (citation omitted). The United States Supreme Court has stated that primary jurisdiction "does more than prescribe the mere procedural timetable of the lawsuit. It is a doctrine allocating the law-making power over certain aspects of commercial relations. It transfers from court to agency the power to determine some of the incidents of such relations." *Id.* at 65, 77 S.Ct. 161 (citation and internal quotation marks omitted). The Supreme Court has therefore indicated that, in some situations, courts are precluded from interpreting statutory language that an agency is tasked with implementing. *See id.* at 65–66, 77 S.Ct. 161 (quoting *Great N. Ry. Co. v. Merchs.' Elevator Co.*, 259 U.S. 285, 291, 42 S.Ct. 477, 66 L.Ed. 943 (1922)) (citing *Tex. & Pac. Ry. Co. v. Am. Tie & Timber Co.*, 234 U.S. 138, 34 S.Ct. 885, 58 L.Ed. 1255 (1914)); *see also Slocum v. Del., Lackawanna & W. R.R. Co.*, 339 U.S. 239, 245, 70 S.Ct. 577, 94 L.Ed. 795 (1950) (Reed, J., dissenting) (arguing that a literal reading of the majority's opinion would lead to the National Railway Adjustment Board's decisions being largely free from judicial review); *id.* at 252–53, 70 S.Ct. 577 ("[T]he Court says that Congress has forced the parties into a forum that has few of the attributes of a court, but which may be the final judge of the rights of individuals.").

Regardless of whether applying the doctrine of primary jurisdiction as expressed in *Western Pacific Railroad Co.* would lead to Defendants' desired outcome, they have cited no South Carolina precedent adopting this expansive version of the doctrine, nor have we found any that would justify insulating the REC's decisions from judicial review and ignoring the plain language of the Timeshare Act.[10] The doctrine of primary jurisdiction is justified, at least in part, on the basis of furthering legislative intent. *See, e.g., W. Pac. R.R. Co.*, 352 U.S. at 64, 77 S.Ct. 161 (noting the doctrine exists because "agencies created by Congress for regulating the subject matter should not be passed over" (citation omitted)). Yet declaring the REC's decisions to be binding on the courts would frustrate legislative intent as expressed in both the Timeshare Act, which contemplates a private right to initiate judicial proceedings notwithstanding the REC's actions, and the APA, which expressly provides for judicial review of an administrative agency's decisions. *Cf.* S.C. Code Ann. § 27-32-130 (directing the REC to promulgate regulations *"subject to"* the APA (emphasis added)). Moreover, to declare the REC's adjudicative decisions immune from judicial review would effectively nullify the Court's answers to the first two certified questions, at least in situations where the REC determines no violation has occurred—if the REC's decisions were binding, judicial proceedings alleging a violation of the Timeshare Act would be meaningless. In short, the courts should provide the REC's decisions the same deference as any other agency's, no more and no less. *See* S.C. Code Ann. §§ 1-23-380(5), 1-23-610(B) (Supp. 2016).

---

**10.** Defendants cite the court of appeals' decision in *Medical University of South Carolina v. Taylor*, 294 S.C. 99, 362 S.E.2d 881 (Ct. App. 1987). In that case, the court held the circuit court erred in granting declaratory and injunctive relief where there were pending administrative proceedings between the same parties involving the same issue. *Id.* at 105, 362 S.E.2d at 884–85. Thus, *Taylor* stands for the proposition that courts should not interfere with proceedings that are already underway in "the administrative agency vested with primary jurisdiction of the question in issue." *Id.* Simply put, the *Taylor* court held that parties are required to follow the review procedures established by statute. *Id.* at 105, 362 S.E.2d at 885. *Taylor* does not provide support for the broader proposition that an administrative agency's decisions are not reviewable by the courts.

That said, if a court, either in a proceeding brought pursuant to the APA or in the underlying litigation, declares the REC acted within its lawful authority in issuing a particular decision, the REC's decision is then binding on the courts. Our law only requires there be some avenue for a court to determine the validity of the REC's ruling. If the court satisfies itself that the decision was lawful, there will be no further inquiry into the wisdom of the REC's decision. This procedure properly balances a person's constitutional and statutory right to challenge an administrative agency's decision with the deference that should be given to an agency tasked by the legislature with administering a particular statutory scheme. *See Kiawah Dev. Partners, II*, 411 S.C. at 53, 766 S.E.2d at 728 (Toal, C.J., dissenting).

## IV.

As Defendants have made clear, these certified questions have serious public policy implications. Defendants would have us declare section 27-32-130 ambiguous, thereby allowing us to take those concerns into consideration when answering these questions. However, the statute is not ambiguous, and our rules of statutory interpretation require us to give effect to its unambiguous language. We leave Defendants' policy concerns for the legislature. *See Taghivand*, 411 S.C. at 244, 768 S.E.2d at 387 (recognizing the General Assembly as the primary source of the state's public policy (citation omitted)); *see also State v. Duncan*, 269 S.C. 510, 519, 238 S.E.2d 205, 209 (1977) (noting that the state constitution does not require magistrates be attorneys and any such requirement would have to come from the legislature); *cf. Freeman v. J.L.H. Invs., LP*, 414 S.C. 362, 381 n.21, 778 S.E.2d 902, 912 n.21 (2015) (inviting the General Assembly to correct the Court's interpretation of a statute if it disagreed with the Court's ruling); *State v. One Coin-Operated Video Game Mach.*, 321 S.C. 176, 181, 467 S.E.2d 443, 446 (1996) (stating that "the General Assembly is free to correct any misinterpretation [of a statute] on our part"). Accordingly, we hold that (1) the REC does not have exclusive jurisdiction to hear claims for violations of the Timeshare Act, (2) a finding by the REC of a Timeshare Act violation is not a condition precedent to bringing a private cause of action under the Act, and (3) the REC's decisions are

not binding on the courts unless they have been subjected to judicial review and found to be lawful.

**CERTIFIED QUESTIONS ANSWERED.**

BEATTY, C.J., HEARN, FEW, JJ., and Acting Justice Thomas Anthony Russo, Sr., concur.