JUSTICE FEW :
This Court accepted the following certified question from the United States District Court for the District of South Carolina:
Did South Carolina Act 27 of 2005 amend section 15-3-640 of the South Carolina Code (Supp. 2018) so that, in an action for damages based upon a defective improvement to new-construction real property, the date of "substantial completion of the *801 improvement" is measured from the date of the certificate of occupancy (unless the parties establish a different date by written agreement), superseding the Supreme Court of South Carolina's decision in Ocean Winds Corp. of Johns Island v. Lane , 347 S.C. 416, 556 S.E.2d 377 (2001) ?
I. Facts and Procedural History
Mark Lawrence constructed his home near Mount Pleasant, South Carolina, using structural insulated panels manufactured by General Panel Corporation. Structural insulated panels-referred to in the residential construction industry as SIPs-are a structural alternative to traditional wood-frame construction. Lawrence claims faulty installation of the General Panel SIPs used in constructing his home allowed water intrusion, which in turn caused the panels to rot, damaging the structural integrity of his home. He brought this claim in federal district court alleging General Panel was liable for providing defective installation instructions to the subcontractor installing the SIPs.
General Panel filed a motion for summary judgment in the district court. The motion was based on section 15-3-640-a statute of repose-which provides, "No actions to recover damages based upon or arising out of the defective or unsafe condition of an improvement to real property may be brought more than eight years after substantial completion of the improvement." General Panel's entitlement to summary judgment under section 15-3-640 depended on the date of "substantial completion." The subcontractor completed the installation of the SIPs in Lawrence's home by March 2007. The home was not finished, however, until over a year later. Charleston County issued a certificate of occupancy on December 10, 2008. Lawrence filed his lawsuit against General Panel on December 8, 2016, more than eight years after installation of the SIPs, but less than eight years after the certificate of occupancy was issued.
II. Ocean Winds and the 2005 Amendments
In Ocean Winds , also a certified question from the district court, the entity that "developed, built, and owned a condominium project on Seabrook Island" brought a lawsuit against the manufacturer of windows installed in the condominium buildings. 347 S.C. at 417, 556 S.E.2d at 378. The developer sought indemnity for liability the developer might incur to the homeowners' association for water intrusion and other structural problems resulting from defective windows. Id. The certified question in that case asked us to determine whether the section 15-3-640 statute of repose[1] ran from "substantial completion of the installation of the windows or ... substantial completion of the building as a whole." 347 S.C. at 418, 556 S.E.2d at 378. We held "the statute of repose began running when installation of the windows was complete." 347 S.C. at 419, 556 S.E.2d at 379.
Under Ocean Winds , therefore, the date of substantial completion for installation of the SIPs in Lawrence's home was March 2007. As the district court found in its certification order, "If Ocean Winds is still good law, Plaintiff's claims are barred." However, as the district court also found, "If Ocean Winds has been superseded by [the 2005 amendments to section 15-3-640 ], the statute of repose does not bar any of Plaintiff's claims."
The 2005 amendment that is important to this case added a sentence to section 15-3-640. The new sentence provides, "For any improvement to real property, a certificate of occupancy ... shall constitute proof of substantial completion of the improvement ..., unless the contractor and owner ... establish a different date of substantial completion." Act No. 27, 2005 S.C. Acts 107, 110; § 15-3-640. We accepted this certified question from the federal district court to determine whether the Legislature intended to "supersede" our holding in Ocean Winds when it added that sentence to section 15-3-640. Lawrence argues the Legislature intended the date of substantial completion always *802 to be the date of the issuance of a certificate of occupancy. General Panel argues that was not the Legislature's intent.
III. Analysis
We begin our analysis of what the Legislature intended by amending section 15-3-640 by considering subsection 15-3-630(b)-the definition of "substantial completion"-which the Legislature has not changed since the subsection was originally enacted in 1970. See Act 1071, 1970 S.C. Acts 2397. First, if the Legislature intended the date of substantial completion always to be the date of issuance of a certificate of occupancy, the obvious best step to achieve that purpose would be to amend the definition of the term. The fact the Legislature did not amend the definition-or the subsection that contains it-indicates to us it was not the Legislature's intent to make the date uniform in all cases.
Second, the text of subsection 15-3-630(b) defines substantial completion as "that degree of completion of a project ... or a specified area or portion thereof ... upon attainment of which the owner can use the same for the purpose for which it was intended." S.C. Code Ann. § 15-3-630(b) (2005). If the Legislature intended the date of substantial completion always to be the date of the certificate of occupancy, which occurs only upon completion of the entire project, it would no longer be necessary to provide that substantial completion could be "completion of ... a specified area or portion" of a project, as subsection 15-3-630(b) continues to provide. To interpret the 2005 amendments as Lawrence argues would render the "specified area or portion" language-perhaps the entirety of subsection 15-3-630(b)-meaningless. See Florence Cty. Democratic Party v. Florence Cty. Republican Party , 398 S.C. 124, 128, 727 S.E.2d 418, 420 (2012) ("the Court should seek a construction that gives effect to every word of a statute rather than adopting an interpretation that renders a portion meaningless" (citing Hinton v. S.C. Dep't of Prob., Parole & Pardon Servs. , 357 S.C. 327, 342, 592 S.E.2d 335, 343 (Ct. App. 2004) ) ).
Third, subsection 15-3-630(b) was the basis of our decision in Ocean Winds . There, we found the windows "were 'a specified area or portion' of the larger condominium project." 347 S.C. at 419, 556 S.E.2d at 379 (quoting subsection 15-3-630(b) ). We then held, "Upon their incorporation into the larger project, ... Ocean Winds ... could use the windows 'for the purpose for which [they were] intended.' " Id. (quoting subsection 15-3-630(b) ). We held "the statute of repose began running when installation of the windows was complete." Id. We specifically stated, "The definition of 'substantial completion' contained in § 15-3-630 requires this result." Id. If the Legislature intended to "supersede" our holding in Ocean Winds , it was necessary to address the basis of our holding-subsection 15-3-630(b). It makes no sense for the Legislature to "supersede" our interpretation of subsection 15-3-630(b) by amending a different section-15-3-640.
We find, therefore, the Legislature did not intend the date of substantial completion to be the date of the issuance of a certificate of occupancy in all cases. Our conclusion is supported by consideration of the obvious purpose the Legislature legitimately had in adding the new sentence to section 15-3-640 in 2005. When a project is nearing completion, there are often ongoing issues the contractor or a subcontractor must address. For example, the installation of a sprinkler system, a sound system, or even the heating and air conditioning system, is frequently followed up by months-even years-of adjustments, upgrades, or repairs. This work could potentially extend the date of substantial completion for that "specified area or portion," or the entire project. The purpose of the new sentence was to provide prima facie "proof of substantial completion," despite any ongoing work on a particular area or portion. Under the revised version of section 15-3-640, the statute of repose begins to run at the latest on the date of the certificate of occupancy, even if there is ongoing work on any particular part of the project.
Lawrence concedes it was at least part of the Legislature's intent to create this "latest" date for the statute of repose to begin. He argues, however, the Legislature also intended to create an "earliest" date for projects where there is a certificate of occupancy.
*803 Under Lawrence's interpretation, subsection 15-3-630(b) would have no effect on projects where a certificate of occupancy has been issued, but the subsection would control in situations where no certificate has been issued.[2] We disagree with Lawrence's interpretation. First, his argument takes us back to our original position that the obvious step for the Legislature to take to achieve what Lawrence argues was its purpose would have been to amend the definition of substantial completion. Under Ocean Winds , the subsection 15-3-630(b) definition of substantial completion applied in all cases. It makes no sense that the Legislature now intends the definition to apply only in some cases, but did not amend the subsection containing the definition.
Second, the interpretation Lawrence advances creates several scenarios that demonstrate his interpretation to be impractical and unreasonable. In one scenario, a homeowner who installed the foundation for his home, but significantly delayed construction of the rest of the home, could hold the foundation contractor on the hook far longer than the Legislature intended when it reduced the repose period from thirteen years to eight years. See supra , note 1. In another scenario, the owner of improved real estate as to which no certificate of occupancy was issued at the conclusion of the improvements could restart the repose period by seeking a certificate of occupancy years after construction was complete, conceivably even after the original eight-year period expired.[3] These scenarios demonstrate that Lawrence's interpretation of the effect of the 2005 amendments to section 15-3-640 is an impractical and unreasonable interpretation. See Fullbright v. Spinnaker Resorts, Inc. , 420 S.C. 265, 272, 802 S.E.2d 794, 798 (2017) ("A statute as a whole must receive practical, reasonable, and fair interpretation consonant with the purpose, design, and policy of lawmakers." (quoting State v. Henkel , 413 S.C. 9, 14, 774 S.E.2d 458, 461 (2015) ) ).
Our interpretation of the 2005 amendments to section 15-3-640, on the other hand, embraces the wisdom of subsection 15-3-630(b) and our interpretation of it in Ocean Winds . The SIPs are structural. Their purpose is not only to provide structure upon completion of the home, but also to provide the structure necessary for the rest of the home to be constructed. For the same reasons foundation work must precede framing, and traditional framing must be completed before almost any other portion of the home may be begun, the SIP framing system must be in place to enable other subcontractors to install electrical, flooring, roofing, sheetrock, heating and air conditioning, and even sound. Here, the certificate of occupancy for Lawrence's home was delayed until twenty months after he completed installation of his SIP structural system. As subsection 15-3-630(b) contemplates, the SIP structural system began to serve "the purpose for which it was intended" long before the date that Lawrence would have us find the statute of repose began to run.
IV. Conclusion
We answer the certified question, "No, the 2005 amendments to section 15-3-640 of the South Carolina Code (Supp. 2018) did not supersede the Supreme Court of South Carolina's decision in Ocean Winds Corp. of Johns Island v. Lane , 347 S.C. 416, 556 S.E.2d 377 (2001)."
CERTIFIED QUESTION ANSWERED.
KITTREDGE and JAMES, JJ., concur. HEARN, J., dissenting in a separate opinion in which BEATTY, C.J., concurs.
I agree with the majority's view that the legislature's intent is the critical inquiry in this case, but I reach the opposite conclusion. As a result, I respectfully dissent.
In Ocean Winds , we declined to interpret Section 15-3-640's statute of repose, forbidding *804 actions for damages more than 13 years following substantial completion of an improvement to property, to begin running upon issuance of a certificate of occupancy. 347 S.C. at 419-22, 556 S.E.2d at 379-80. Approximately four years following our decision, the General Assembly set out to reduce the statute of repose for construction defects and to define substantial completion.[4] The Senate proposed S. 345, to which it added the following language in an amendment: "[f]or any improvement to real property, a certificate of occupancy issued by a county or municipality shall constitute proof of substantial completion of the improvement under the provisions of section 15-3-630, unless the contractor and owner, by written agreement, establish a different date of substantial completion."[5] Thereafter, the Senate voted to amend the House version of the bill, H. 3008, with the identical provision.[6] The House agreed with the Senate's amendments,[7] and Act 27, which applies to improvements to real property for which certificates of occupancy are issued or a final inspection by a local building official is required, became law. Act No. 27, 2005 S.C. Acts 109, 123; S.C. Code Ann. § 15-3-640 (Supp. 2017).[8]
The General Assembly is presumed to be aware of our precedent interpreting its statutes. Wigfall v. Tideland Util., Inc. , 354 S.C. 100, 111, 580 S.E.2d 100, 105 (2003). When used in a statute, the term "shall" means the action is mandatory. Id . In codifying the trigger for substantial completion we rejected, I believe the legislature intended to supersede our holding in Ocean Winds . It accomplished its goal by establishing a bright-line rule: substantial completion occurs upon issuance of a certificate of occupancy, unless the parties have contracted otherwise.
I acknowledge the General Assembly did not amend the definition of substantial completion in Section 15-3-630(b). Although it may have been the best practice to have done so, "[a]ll rules of statutory construction are subservient to the one that the legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in the light of the intended purpose of the statute." Broadhurst v. City of Myrtle Beach Election Comm'n , 342 S.C. 373, 380, 537 S.E.2d 543, 546 (2000). I believe the intent of the legislature in defining substantial completion in cases involving a certificate of occupancy or local building inspection was clear. Although the statute also shortened the statute of repose, the substantial completion amendment appears to be a classic legislative compromise aimed at providing certainty for all those involved. Moreover, the provision allowing the parties to set their own date of substantial completion promotes negotiation between those in the best position to do so: the parties to the contract.
Accordingly, I would answer the question in the affirmative.
BEATTY, C.J., concurs.

At that time, the statute of repose was thirteen years. See Ocean Winds , 347 S.C. at 418, 556 S.E.2d at 378 (quoting section 15-3-640). The Legislature reduced the repose period to eight years as part of the 2005 amendments. Act No. 27, 2005 S.C. Acts 107, 109.

This interpretation, Lawrence argues, does not render the "specified area or portion" language-or subsection 15-3-630(b)-entirely meaningless.

We have been able to find no provision of law that prevents a certificate of occupancy from being issued long after construction is complete.

This is evidenced by the preamble of S. 345, introduced by then-Senator Larry Martin. S. 345, 116th Leg. (S.C. Jan. 26, 2005).

S. 345, 116th Leg. (S.C. Feb. 2, 2005).

S.C. S. Journal, 116th Leg. (Mar. 8, 2005).

S.C. S. Journal, 116th Leg. (Mar. 17, 2005).

The Act also created section 15-38-15 of the South Carolina Code regarding joint and several liability. Act No. 27, 2005 S.C. Acts 109, 118-19. In addition to providing a procedure for assessing such liability, the statute provided that the effective date of July 1, 2005, applied to "causes of actions relating to construction torts and to improvements to real property that first obtain substantial completion on or after July 1, 2005." Id . at 123. Importantly, the amendment stated "[f]or purposes of this section, an improvement to real property obtains substantial completion when a municipality or county issues a certificate of occupancy in the case of new construction, or completes a final inspection in the case of improvements to existing improvements." Id . (emphasis added).