# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

ArrowPointe Federal Credit Union, Respondent,

v.

Jimmy Eugene Bailey; Laura Jean Bailey; and U.S. Bank National Association, not in its individual capacity but solely in its capacity as Indenture Trustee for WVUE 2015-1, Defendants,

of which U.S. Bank National Association, not in its individual capacity but solely in its capacity as Indenture Trustee for WVUE 2015-1, is the Petitioner.

Appellate Case No. 2021-000149

———

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

———

Appeal from Fairfield County
Carol Ann Tolen, Special Referee

———

Opinion No. 28129
Heard May 18, 2022 – Filed January 11, 2023

———

## AFFIRMED

———

Shaun C. Blake and Andrew Bryant Walker, both of Rogers Lewis Jackson Mann & Quinn, LLC, of Columbia, and Sean Matthew Foerster, of Rogers Townsend & Thomas, PC, of Columbia, for Petitioner.

Christy Curtis Jones, of Sherpy & Jones, P.A., of Columbia, and Jonathan McKey Milling, of Milling Law Firm, LLC, of Columbia, for Respondent.

Demetri K. Koutrakos and Harry Alwyn Dixon, of Callison Tighe & Robinson, LLC, of Columbia, for Amici Curiae the American Land Title Association and the Palmetto Land Title Association.

---

**JUSTICE JAMES:**  In this real estate mortgage priority dispute, we must decide whether we will adopt the "replacement mortgage doctrine."  The special referee ruled the question of whether to adopt the doctrine is one for the General Assembly, and the court of appeals affirmed.  *ArrowPointe Fed. Credit Union v. Bailey*, 432 S.C. 373, 852 S.E.2d 473 (Ct. App. 2020).  We granted U.S. Bank's petition for a writ of certiorari.  We affirm the court of appeals' opinion.

## Background

Jimmy Eugene Bailey and Laura Jean Bailey mortgaged their residence at 247 Morninglow Drive in Winnsboro (the subject property) to Quicken Loans.  The mortgage (Quicken First Mortgage) was secured by a note in the principal amount of $256,500 and was recorded on October 20, 2009.  One week later, the Baileys entered into an equity line of credit with ArrowPointe Federal Credit Union (the ArrowPointe LOC) in the maximum principal amount of $99,000.  The ArrowPointe LOC was secured by a mortgage, which was recorded on November 4, 2009.  At that time, ArrowPointe had record notice of the Quicken First Mortgage.  The events that followed led to the question before us.

On November 23, 2009, the Baileys refinanced the Quicken First Mortgage and obtained a new loan from Quicken Loans (the Quicken Refinance Mortgage) in the principal amount of $296,000—a $39,500 increase from the Quicken First Mortgage.  The Baileys executed a "Title Company Client Acknowledgement" at closing, which stated the only outstanding lien on the subject property was the Quicken First Mortgage; this was obviously incorrect, as the ArrowPointe LOC was an outstanding lien.  There is no clear explanation in the record as to whether Quicken obtained a title examination to ascertain the existence of intervening liens or, if an examination was conducted, why the ArrowPointe LOC was not discovered.  In any event, Quicken Loans did not ask ArrowPointe to sign a subordination agreement, and ArrowPointe was unaware of the refinance transaction.

The Baileys used $257,459.04 from the Quicken Refinance Mortgage to pay off the Quicken First Mortgage. On December 15, 2009, Quicken Loans released the Quicken First Mortgage and recorded the Quicken Refinance Mortgage. The Baileys received $26,235.11 in cash from the remaining principal on the Quicken Refinance Mortgage. Quicken Loans thereafter assigned the Quicken Refinance Mortgage numerous times, with Petitioner U.S. Bank becoming the final holder.

The Baileys subsequently defaulted on the ArrowPointe LOC, and ArrowPointe filed this action seeking a declaration that its line of credit had priority over the Quicken Refinance Mortgage. The parties stipulated that as of March 13, 2017, the amount due on the ArrowPointe LOC was $187,201.60.

Both U.S. Bank and ArrowPointe moved for summary judgment. U.S. Bank argued it was entitled to priority under the replacement mortgage doctrine. ArrowPointe, however, contended it was entitled to priority because Quicken Loans had record notice of its line of credit at the time of refinancing. The special referee granted ArrowPointe's motion. The referee found South Carolina does not recognize the replacement mortgage doctrine, and even if it did, the doctrine would not apply in this case. The referee further found that because Quicken Loans did not obtain a subordination agreement from ArrowPointe at the time of refinancing, ArrowPointe had priority under the race-notice statute. Accordingly, the referee ordered foreclosure of the mortgage securing the ArrowPointe LOC and sale of the subject property.

U.S. Bank appealed the referee's order, and the court of appeals affirmed. *ArrowPointe*, 432 S.C. at 383, 852 S.E.2d at 478. The court of appeals held the question of whether to adopt the replacement mortgage doctrine is one for the General Assembly. Because Quicken Loans had record notice of the ArrowPointe LOC at the time of refinancing, the court of appeals concluded ArrowPointe has priority over U.S. Bank. We affirm the court of appeals' opinion.

## Discussion

South Carolina has a race-notice recording statute, which prioritizes property liens based on notice and the date of recording. *See* S.C. Code Ann. § 30-7-10 (2007); *Regions Bank v. Wingard Props. Inc.*, 394 S.C. 241, 255, 715 S.E.2d 348, 355 (Ct. App. 2011) ("The recording statute found in section 30-7-10 . . . provides that all mortgages are valid, without notice, from the day they are recorded in the register of deeds for the county where the real property is located."). When the recording statute was enacted, it stated,

> All deeds of conveyance of lands . . . all mortgages or instruments in writing . . . of any property . . . . shall be valid, so as to effect, from the time of such delivery of execution, the rights of subsequent creditors or purchasers for valuable consideration without notice, only when recorded . . . .

1 Rev. Stat. § 1968 (1893) (current version at S.C. Code Ann. § 30-7-10).

We have recognized the equitable subrogation doctrine as an exception to the race-notice statute.[1] *See, e.g.*, *Indep. Nat'l Bank*, 411 S.C. at 608, 769 S.E.2d at 665; *Matrix Fin. Servs. Corp. v. Frazer*, 394 S.C. 134, 137, 714 S.E.2d 532, 533 (2011); *Dedes v. Strickland*, 307 S.C. 155, 158, 414 S.E.2d 134, 136 (1992); *Enter. Bank v. Fed. Land Bank of Columbia*, 139 S.C. 397, 404, 138 S.E. 146, 148 (1927); *Prudential Inv. Co. v. Connor*, 120 S.C. 42, 56-58, 112 S.E. 539, 544 (1921). We first recognized the doctrine in 1921. *See Connor*, 120 S.C. at 56-57, 112 S.E. at 544. We noted the "right of subrogation is essentially a creation of the court of equity," which allows "a person who is secondarily liable for a debt, upon paying the debt, to assume by law the place of the creditor whose debt is paid, and become entitled to the securities and remedies of the creditor . . . ." *Id.* at 56, 112 S.E. at 544 (cleaned up). Decades later, we declined to invoke the doctrine for a lender that refinanced its own mortgage but did not discover an intervening mortgage. *Dedes*, 307 S.C. at 159, 414 S.E.2d at 136. In a nod to the race-notice statute, we warned lenders of their duty to conduct a proper search to ascertain the existence of other recorded liens.

The replacement mortgage doctrine is another exception to the race-notice statute, and many jurisdictions either recognize the doctrine or follow its logic. *See, e.g.*, *Bowling Green Sports Ctr., Inc. v. G.A.G. LLC*, 77 N.E.3d 728, 732 (Ill. App. Ct. 2017); *US Bank, N.A. v. JPMorgan Chase Bank, N.A*, 398 P.3d 118, 121 (Ariz. Ct. App. 2017); *AJJ Enters., LLP v. Jean-Charles*, 125 A.3d 618, 631 (Conn. App. Ct. 2015); *Nikooie v. JPMorgan Chase Bank, N.A.*, 183 So. 3d 424, 429 (Fla. Dist. Ct. App. 2014); *In re Allen*, 520 B.R. 281, 289 (Bankr. E.D. Mo. 2014); *In re Mortg.*

---

[1] This doctrine states a party may be equitably subrogated to the rights of an earlier creditor if the party demonstrates: (1) he has paid the debt; (2) he was not a volunteer but had a direct interest in the discharge of the debt or lien; (3) he was secondarily liable for the debt or for the discharge of the lien; (4) no injustice would be done by the allowance of equitable subrogation; and (5) he did not have actual notice of the prior lien. *Indep. Nat'l Bank v. Buncombe Prof'l Park, LLC*, 411 S.C. 605, 608, 769 S.E.2d 663, 665 (2015).

*Store*, 509 B.R. 292, 297 (Bankr. D. Haw. 2014); *Sovereign Bank v. Gillis*, 74 A.3d 1, 5 (N.J. Super. Ct. App. Div. 2013); *In re River E. Plaza, LLC*, 669 F.3d 826, 831 (7th Cir. 2012); *Green Tree Servicing, LLC v. United States*, 783 F. Supp. 2d 243, 249 (D.N.H. 2011); *CitiMortgage, Inc. v. Mortg. Elec. Registration Sys., Inc.*, 813 N.W.2d 332, 334 (Mich. Ct. App. 2011); *Deutsche Bank Nat'l Tr. Co. v. Roberts*, 233 P.3d 805, 809 (Okla. Civ. App. 2010); *Sheppard v. Interbay Funding, LLC*, 305 S.W.3d 102, 107 (Tex. Ct. App. 2009); *Bank of Am., N.A. v. Prestance Corp.*, 160 P.3d 17, 27 (Wash. 2007).  According to the Restatement (Third) of Property: Mortgages, the replacement mortgage doctrine provides:

> (a)  If a senior mortgage is released of record and, as part of the same transaction, is replaced with a new mortgage, the latter mortgage retains the same priority as its predecessor, except
>
>> (1) to the extent that any change in the terms of the mortgage or the obligation it secures is materially prejudicial to the holder of a junior interest in the real estate, or
>>
>> (2) to the extent that one who is protected by the recording act acquires an interest in the real estate at a time that the senior mortgage is not of record.

§ 7.3 (Am. L. Inst. 1997 & Oct. 2022 Update).

Although this Court has referenced the replacement mortgage doctrine, we have neither adopted nor rejected it.  *Matrix*, 394 S.C. at 138, 714 S.E.2d at 534.  In *Matrix*, the lender did not assert priority under the replacement mortgage doctrine; therefore, we did not "decide whether a lender that refinances its own debt could attain priority under" the replacement mortgage doctrine.  *Id.*  Here, U.S. Bank asserts priority under the replacement mortgage doctrine.  We agree with the court of appeals that the question of whether to adopt the doctrine is one for the General Assembly and not this Court.

Determinations of public policy "are chiefly within the province of the legislature, whose authority on these matters we must respect."  *Fullbright v. Spinnaker Resorts, Inc.*, 420 S.C. 265, 271, 802 S.E.2d 794, 797 (2017).  We do not sit as a superlegislature to second-guess the General Assembly's decisions.  *Keyserling v. Beasley*, 322 S.C. 83, 86, 470 S.E.2d 100, 101 (1996); *see Smith v. Tiffany*, 419 S.C. 548, 565, 799 S.E.2d 479, 488 ("We are a court, not a legislative body.").  "Respect for separation of powers compels us to recognize that the General Assembly is the author of our state's public policy . . . ."  *State v. Slocumb*, 426 S.C.

297, 314, 827 S.E.2d 148, 157 (2019); *see Tiffany*, 419 S.C. at 559, 799 S.E.2d at 485 ("In honoring the separation of powers, we adhere to the principle that a court must not reject the legislature's policy determinations merely because the court may prefer what it believes is a more equitable result."). Accordingly, we cannot change the meaning of a clear and unambiguous statute. *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000).

U.S. Bank argues that because we adopted the equitable subrogation doctrine as an exception to the race-notice statute, we can also adopt the replacement mortgage doctrine. We disagree. Although there is an intervening mortgage—such as ArrowPointe's—in both scenarios, the two doctrines have different effects. Under the equitable subrogation doctrine, a substitute mortgagee steps into the shoes of the original mortgagee, and the original mortgage remains intact in all respects relative to "race-notice." The mortgage remains unsatisfied, and a new mortgage is not recorded. In that sense, the "race" began before the substitute mortgagee stepped into the shoes of the original mortgagee, and the junior mortgagee has not lost anything at all. However, under the replacement mortgage doctrine, the original first mortgage is satisfied of record and replaced with a new mortgage that is recorded after the intervening mortgage. While the new mortgage may have similar terms as the original first mortgage, that is not always so. For example, in the case before us, the Quicken Refinance Mortgage contained a significantly higher principal amount. While the replacement mortgage doctrine provides the intervening lienholder with some relief "to the extent that any change in the terms of the mortgage or the obligation it secures is materially prejudicial to" the intervening lienholder, we conclude the replacement mortgage doctrine invites needless litigation that could be avoided by a simple examination of the title to the real property.

Similarly, the replacement mortgage doctrine dilutes the importance of a thorough title examination that is inherent in our race-notice statute, even when a short amount of time passes between the recording of a mortgage and the refinancing of that mortgage. Before a senior mortgagee, such as Quicken Loans, finalizes the refinancing of its existing mortgage, it can easily ensure the priority of its lien position by having the title to the property examined to discover the existence of intervening liens. If the examination reveals an intervening lien, the senior mortgagee can evaluate its options and act accordingly. Among other things, the senior mortgagee can terminate the refinancing transaction or request the intervening lienholder(s) to subordinate the intervening lien(s) to the new mortgage. We see no reason to adopt a doctrine that excuses the failure to conduct such a title examination—or, when a title examination is conducted, the failure to ascertain the existence of an intervening lien.

## Conclusion

The General Assembly has plenary authority to make policy decisions on behalf of the state. Therefore, we agree with the court of appeals that the question of whether to adopt the replacement mortgage doctrine is one for the General Assembly. We also agree that because Quicken Loans was on record notice of the ArrowPointe LOC when the Quicken First Mortgage was refinanced, our race-notice statute awards ArrowPointe priority over U.S. Bank. Finally, we emphasize parties must conduct diligent title searches to protect their interests under the race-notice statute.

**AFFIRMED.**

**KITTREDGE, FEW, JJ., and Acting Justices James E. Lockemy and Stephanie P. McDonald, concur.**